Harry LEWIS, Plaintiff-Appellant,

v.

Charles A. ANDERSON, Ralph E. Bailey, Howard W. Blauvelt, Theodore F. Brophy, Charles W. Buek, William H. Donaldson, Nancy Hanks, W.A. Hewitt, Robert P. Jensen, J.E. Kircher, Dean Robert McKay, M.B. Morris, Frank Pace, Jr., W. Dewey Presley, James E. Robison, R.L. Adams, R.W. Gerwig, A.K. McColpin, J.D. Morrow, C.S. Nicandros, R.E. Samples, S. Schwartz and Conoco Inc., Defendants-Appellees.

Supreme Court of Delaware.

Submitted: March 18, 1983.

Resubmitted: Nov. 21, 1983.[*]

Decided: April 18, 1984.

---

[*] On September 19, 1983, supplemental briefing was ordered on specific issues; and the case was reargued on November 21, 1983.

Irving Bizar (argued) of Bizar & D'Alessandro, New York City, of Counsel; Thomas D. Whittington, Jr. and Judith N. Renzulli of Wilson, Whittington & Aulger, Wilmington, for plaintiff-appellant.

Jack B. Jacobs (argued) and Bruce M. Stargatt of Young, Conaway, Stargatt & Taylor, Wilmington; Robert C. Myers and Martha E. Solinger of Dewey, Ballantine, Bushby, Palmer & Wood, New York City, of counsel, for individual defendants-appellees.

A. Gilchrist Sparks, III (argued) and Andrew B. Kirkpatrick, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant-appellee Conoco, Inc.

Before HERRMANN, C.J., McNEILLY and HORSEY, JJ.

HORSEY, Justice.

Plaintiff appeals from an Order of the Court of Chancery dismissing his derivative action asserted on behalf of Conoco, Inc. ("Old Conoco"), a Delaware corporation, against Old Conoco's former management. Dismissal followed Old Conoco's merger with a wholly-owned subsidiary of E.I. Du

Pont de Nemours and Company ("Du Pont"), Du Pont Holdings, Inc., renamed Conoco, Inc. ("New Conoco"). The question presented involves the effect of a corporate merger on ownership of a derivative claim and standing of the derivative claimant to pursue his claim following merger. The Chancellor ruled that plaintiff lost standing to pursue Old Conoco's derivative claim when he ceased to be a shareholder of Old Conoco and that his underlying claim thereby became the exclusive property right of New Conoco and its sole shareholder, Du Pont. We agree and therefore affirm.

## I

### A

On July 17, 1981, plaintiff, Harry Lewis, filed a shareholder's derivative action on behalf of Old Conoco against various of its officers and all of its directors. The complaint alleges that defendants, "in anticipation of a potential takeover of [Old Conoco] by outside interests", caused the corporation to enter into employment agreements with nine of its key officers, two of whom were directors of Old Conoco. Under the terms of the agreements, the recipients (two of whom were director-defendants and the rest, officer-defendants) were to receive benefits estimated at $5,000,000 upon the happening of one of three events: (a) the common stock of Old Conoco being no longer listed on the New York Stock Exchange; (b) 20% or more of its outstanding common stock being acquired by outside interests; or (c) the nine recipient defendants' employment with Old Conoco being terminated.

Plaintiff claims these "golden parachutes" to be: illegal, improper, without a valid business purpose, a fraud upon Old Conoco or a waste of corporate assets. The relief sought is that performance of the contracts be enjoined and that defendants account for any damages sustained by Old Conoco or profits realized by them from the agreements. Plaintiff does not attack the fairness of the merger or allege any wrongdoing by Du Pont, not a party.

### B

The facts are not in dispute. On May 6, 1981, Dome Petroleum Ltd. commenced a cash tender offer for 20% of the outstanding common stock of Old Conoco. On June 17, 1981, after completion of Dome's offer, the Compensation Committee of Old Conoco's Board of Directors (none of whom were officers or employees of Old Conoco) authorized and approved the disputed employment contracts. Old Conoco's Board then authorized the company to enter into those contracts, with the two Board members—recipients of the contracts—not taking part in the discussion or vote. The remaining twelve members of Old Conoco's Board of Directors were "outside" directors.

On June 25, 1981, after execution of the employment contracts, Seagram Company, Ltd., Du Pont and Mobil Corporation entered into a "bidding contest" for Old Conoco, from which Du Pont emerged as the winner. By July 1981, Du Pont, through its wholly-owned subsidiary, Du Pont Holdings, Inc., had acquired a majority interest in Old Conoco as a result of Du Pont's cash tender offer. On September 30, 1981, Old Conoco was merged into Du Pont Holdings, Inc., the surviving corporation, which was then renamed Conoco, Inc. ("New Conoco").

Under the terms of the merger, the remaining shareholders of Old Conoco received common stock of Du Pont in exchange for their shares of Old Conoco. Thereafter, the merged company, Old Conoco, ceased to exist; Old Conoco's assets became the property of New Conoco; plaintiff Lewis became a shareholder of Du Pont; and Du Pont became the sole stockholder of New Conoco. As stated, plaintiff has not challenged the propriety of the Du Pont-Conoco merger; sought to enjoin the merger's consummation; or asserted any claim against Du Pont. Plaintiff's claim solely involves the pre-merger action of Old Conoco's directors in approving the employ-

ment contracts which preceded Du Pont's tender offer and merger.

## C

Thereafter, defendants moved to dismiss the complaint or for summary judgment asserting three alternate grounds for relief. *First,* defendants claimed that by reason of the merger, plaintiff lost his status as a shareholder of Old Conoco and became a shareholder of Du Pont; as a result, plaintiff lost standing to continue the derivative suit. *Second,* defendants argued that plaintiff had failed to make the requisite demand upon Conoco's Board of Directors before instituting suit and also failed to establish the futility of a demand. *Third,* defendants claimed that service of process under 10 *Del.C.* § 3114 upon the non-director defendants was insufficient as a matter of law to confer personal jurisdiction over them.

## D

The Chancellor found defendants' first ground for relief sufficient.[1] The Court held that by reason of the merger, plaintiff lost standing to pursue the action. In reaching this result, the Chancellor concluded that through the merger of Old Conoco into Du Pont Holdings, title to plaintiff's derivative claim passed under 8 *Del.C.* § 259 by operation of law from Old Conoco to New Conoco, the surviving corporation. The Court also noted that through the stock-for-stock exchange, Lewis ceased to be a shareholder of Old Conoco and became a shareholder of Du Pont. The Chancellor viewed the merger as having the following consequences both to plaintiff's right to assert Old Conoco's direct claim and plaintiff's standing to pursue his derivative claim:

> [T]he right to a pending cause of action is an asset of a merged corporation which passes to the corporation surviving the merger. Under the facts of this case, any right to equitable relief possessed by the original Conoco against the individual defendants, as its officers and directors, passed to Du Pont Holdings, and thus to the present Conoco, by virtue of the merger. Likewise, by the terms of the same merger, the plaintiff Lewis ceased to be a shareholder of Conoco—either new or old—and instead became a shareholder of Du Pont. The company of which the plaintiff is now a shareholder, Du Pont, now owns all of the stock of the present Conoco and, if the original Conoco had a claim for relief against its former officers and directors for the reasons set forth in the complaint in this action, that claim is now owned by the present Conoco. The shareholder beneficiary of such a claim is now Du Pont, and not the plaintiff Lewis and the other shareholders of the original Conoco as was the situation when the suit was filed.

> Given this scenario brought about by the merger, what logical justification can there be for permitting the plaintiff Lewis, who is no longer a shareholder of the entity possessing the claim, to continue to prosecute the action on behalf of the new Conoco without regard to the feelings of its present 100 percent shareholder, Du Pont? Offhand, I can think of none.

453 A.2d at 479.

## E

Plaintiff's argument for reversal has as its centerpiece 8 *Del.C.* § 261 and its "mandate" that any pre-merger action "shall be prosecuted as if such merger or consolidation had not taken place...." Plaintiff thereby construes § 261 as not only preserving a pre-merger cause of action but, more importantly, as preserving standing of the party bringing such action to pursue it to its ultimate end. Plaintiff thereby reads § 261 as amending by implication both § 259 relating to merger and § 327

---

**1.** While the Chancellor did not rule on either of the remaining grounds for dismissal, the Court stated that, "... in all likelihood the defendants are correct in all of their contentions...." *Lewis v. Anderson,* Del.Ch., 453 A.2d 474 (1982).

relating to standing. Otherwise, plaintiff says, the Chancellor's construction of § 259 "vitiates" § 261 and, more importantly, leaves former shareholders of Old Conoco "without a remedy to redress wrongs." In short, according to plaintiff, the mandate of § 261 [2] that any pending pre-merger action survives a merger is violated if plaintiff's derivative suit is permitted to be dismissed either through loss of ownership of the claim under § 259 or for lack of standing under § 327. Plaintiff contends that otherwise the cause of action is lost for lack of standing of anyone else to pursue it; and the wrongdoers thereby escape accountability.

## II

The question presented requires reconciling three distinct but related provisions of the Delaware Corporation Law: 8 *Del.C.*

2. Plaintiff finds such a mandate in the command of § 261 that, "[a]ny action ... pending by or against any corporation which is a party to a merger or consolidation <u>shall be prosecuted</u> as if such merger or consolidation had not taken place...." (underlining added). Plaintiff argues that this mandate must be interpreted to relate to standing and not simply abatement, as defendants argue.

3. Section 259(a) provides:

(a) When any merger or consolidation shall have become effective under this chapter, for all purposes of the laws of this State the separate existence of all the constituent corporations, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged, as the case may be, shall cease and the constituent corporations shall become a new corporation, or be merged into 1 of such corporations, as the case may be, possessing all the rights, privileges, powers and franchises as well of a public as of a private nature, and being subject to all the restrictions, disabilities and duties of each of such corporations so merged or consolidated; and all and singular, the rights, privileges, powers and franchises of each of said corporations, and all property, real, personal and mixed, and all debts due to any of said constituent corporations on whatever account, as well for stock subscriptions as all other things in action or belonging to each of such corporations shall be vested in the corporation surviving or resulting from such merger or consolidation; and all property, rights, privileges, powers and franchis-

§ 259(a); [3] 8 *Del.C.* § 261; [4] and 8 *Del.C.* § 327.[5]

## A

As to § 259(a), there is no disagreement, and can be none, that plaintiff's derivative claim against the individual defendants of Old Conoco was a property right of Old Conoco. *See Zapata Corp. v. Maldonado,* Del.Supr., 430 A.2d 779 (1981). Nor is there any dispute that upon Old Conoco's merger into Du Pont Holdings, Old Conoco's assets and liabilities, *in general,* passed under § 259(a) to, and became vested in, the surviving corporation, Du Pont Holdings or New Conoco. It would also seem clear under § 259(a) that plaintiff's derivative claim constituted a chose in action which became "vested" in New Conoco. *See Arnstein v. Bethlehem Steel Corp.,* E.D.N.Y., 18 F.Supp. 916 (1937);

es, and all and every other interest shall be thereafter as effectually the property of the surviving or resulting corporation as they were of the several and respective constituent corporations, and the title to any real estate vested by deed or otherwise, under the laws of this State, in any of such constituent corporations, shall not revert or be in any way impaired by reason of this chapter; but all rights of creditors and all liens upon any property of any of said constituent corporations shall be preserved unimpaired, and all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.

4. Section 261 provides:

Any action or proceeding, whether civil, criminal or administrative, pending by or against any corporation which is a party to a merger or consolidation shall be prosecuted as if such merger or consolidation had not taken place, or the corporation surviving or resulting from such merger or consolidation may be substituted in such action or proceeding.

5. Section 327 provides:

In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law.

*Schreiber v. Carney*, Del.Ch., 447 A.2d 17 (1982); *Braasch v. Goldschmidt*, Del.Ch., 199 A.2d 760 (1964).[6] But at this point the parties diverge.

Ignoring or discounting the *Arnstein, Braasch* and *Schreiber* line of cases that a pre-merger derivative claim vests in the surviving corporation, plaintiff presents a novel argument that the derivative cause of action in this case passed to the former shareholders of Old Conoco and "did not pass by virtue of [§ 259] to Du Pont or its subsidiary." To reach this result, plaintiff borrows upon § 261 as impliedly modifying § 259(a) with respect to the impact of a merger upon ownership of a pending derivative suit. Plaintiff maintains that the "shall be prosecuted" language of § 261 "must mean that the original party can continue the suit." It follows, plaintiff argues, that § 261 addresses standing and not simply the non-abatement of pre-merger pending claims, as the Chancellor construed § 261, and that § 261 necessarily amends § 259(a) as to the vesting of "all other things in action [of a merged corporation] ... in the corporation surviving [the] merger." Clearly, § 259's language is too

explicit to be construed other than as passing ownership of Old Conoco's cause of action against its former management to New Conoco; and plaintiff does not contend otherwise. Therefore, whatever merit there is to plaintiff's argument that ownership of Old Conoco's claim against former management asserted derivatively by plaintiff passed to Old Conoco's former stockholders and not to New Conoco literally hinges upon whether § 259 is amended by § 261. However, before focusing upon § 261, § 327 should be addressed. *See* footnote 5 above.

### B

Section 327 is the only provision of the Delaware General Corporation Law that speaks to the question of standing to maintain a derivative action.[7] Yet, plaintiff dismisses § 327 as irrelevant to the question of his standing *to continue* his derivative suit following the merger of Old Conoco into New Conoco and his receipt of shares of Du Pont in exchange for his shares of Old Conoco. Arguing that § 327 should be strictly construed and limited to its precise

---

6. In *Arnstein v. Bethlehem Steel Corp.*, E.D.N.Y., 18 F.Supp. 916 (1937), a stockholder of a New Jersey corporation brought a derivative action against that corporation's directors. 18 F.Supp. at 917. The New Jersey corporation was merged into a Delaware corporation. *Id.* The action was dismissed on the ground that under § 107 of the New Jersey General Corporation Act (which was substantially identical to 8 *Del.C.* § 259), the New Jersey corporation's right of action became vested in the surviving Delaware corporation. *Id.* at 919.

A similar result was reached in *Braasch v. Goldschmidt*, Del.Ch., 199 A.2d 760 (1964). A derivative action was filed on behalf of American Sumatra Tobacco Corporation, a Delaware corporation. 199 A.2d at 762. Pursuant to 8 *Del.C.* § 253, American Sumatra was merged into another Delaware corporation which survived the merger. *Id.* The Court dismissed the action, holding that under § 253 (which had pertinent language essentially identical to § 259(a)), the cause of action passed to the surviving corporation and the stockholders of American Sumatra (which no longer existed) lost their standing to proceed derivatively on American Sumatra's behalf. *Id.* at 767. In *Schreiber v. Carney*, Del.Ch., 447 A.2d 17 (1982),

the Court of Chancery more recently held as it did in this case:

> [I]t is clear that a merger which eliminates a complaining stockholder's ownership of stock in a corporation also ordinarily eliminates his status to bring or maintain a derivative suit on behalf of the corporation, whether the merger takes place before or after the suit is brought, on the theory that upon the merger the derivative rights pass to the surviving corporation which then has the sole right or standing to prosecute the action. [citations omitted]

447 A.2d at 21.

7. Section 327's requirement that the plaintiff to a derivative suit be a stockholder of the corporation on whose behalf the suit is brought at the time of the transaction complained of is mirrored in Court of Chancery Rule 23.1: "In a derivative action ... the complaint shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law." Chancery Court Rule 23.1. The Chancery Court Rule is identical in this respect to Rule 23.1 of the Federal Rules of Civil Procedure.

language, plaintiff states that § 327 would only bar plaintiff's derivative suit had it been commenced on behalf of Old Conoco "*after* the merger, since he was no longer a Conoco shareholder." Plaintiff reasons that "having brought his action *before* the merger, section 261 preserves [his] right to continue the suit." Plaintiff adds that his construction of § 327 "harmonizes" it with his construction of § 259 as amended by § 261.[8]

We disagree generally with plaintiff's narrow construction of § 327. We also disagree with plaintiff's construction of § 327 as applied to this case; that is, that by commencing his derivative suit before Old Conoco was merged out of existence, § 327 has no further application to this case.

■ The short answer is that to this date § 327 in conjunction with Chancery Court Rule 23.1 *and* § 259 have been nearly universally construed as fully applicable to a question of post-merger standing to carry on a derivative suit. In the context of a corporate merger, the following authorities hold that a derivative shareholder must not only be a stockholder at the time of the alleged wrong and at time of commence-ment of suit but that he must also maintain shareholder status throughout the litigation. *Heit v. Tenneco, Inc.*, D.Del., 319 F.Supp. 884 (1970); *Schreiber v. Carney*, Del.Ch., 447 A.2d 17 (1982); *Harff v. Kerkorian*, Del.Ch., 324 A.2d 215 (1974); *Braasch v. Goldschmidt*, Del.Ch., 199 A.2d 760 (1964). The purpose of such a rule is well established: to eliminate abuses associated with a derivative suit. *Harff v. Kerkorian, supra*, at 218.[9]

■ Under Delaware case law, there are two recognized exceptions to this rule of standing as applied to mergers.[10] However, plaintiff seeks to carve out a further exception for pre-merger derivative claims that are asserted against individual defendants as distinguished from a corporate party to a merger. His entire argument is based on this Court's ruling in *Bokat v. Getty Oil Co.*, Del.Supr., 262 A.2d 246 (1970) and a line of non-Delaware cases that have construed *Bokat v. Getty* as plaintiff seeks to construe it.[11] For reasons which follow, we rule that *Bokat v. Getty* should not be construed to be a departure from the *Braasch v. Goldschmidt* and *Heit v. Tenneco* "line" of authorities.[12] Stated another way, *Bokat v.*

---

**8.** Plaintiff also relies on the following language of 8 *Del.C.* § 328: "The liability of ... directors or officers ... shall not in any way be lessened or impaired ... by its merger or consolidation with 1 or more corporations...." Plaintiff argues that this language evidences legislative intent that pre-merger pending litigation be permitted "to continue after a merger ... to prevent such liabilities from being avoided through merger to be carried out." Plaintiff misconceives the relevance of § 328 by confusing standing with survival. *See* footnote 19 below.

**9.** *See also Portnoy v. Kawecki Berylco Industries*, 7th Cir., 607 F.2d 765 (1979) and *Schupack v. Covelli*, W.D.Pa., 498 F.Supp. 704 (1980). They also find a requirement of continuous stock ownership in a corporation throughout a derivative action to be implicit in Federal Rule 23.1.

**10.** The two recognized exceptions to the rule are: (1) where the merger itself is the subject of a claim of fraud; and (2) where the merger is in reality a reorganization which does not affect plaintiff's ownership of the business enterprise. *See, e.g., Bokat v. Getty Oil Co.*, Del.Supr., 262 A.2d 246, 249 (1970); *Schreiber v. Carney*, Del.

Ch., 447 A.2d 17, 21–22 (1982). Those exceptions are not applicable to this case. Plaintiff has not asserted that the merger was perpetrated to deprive Old Conoco of its claim against the individual defendants; and the merger was clearly not a reorganization resulting in a holding company, as in *Schreiber v. Carney*, Del.Ch., 447 A.2d 17 (1982).

**11.** *See Susman v. Lincoln American Corp.*, 7th Cir., 587 F.2d 866 (1978); *Abrams v. Occidental Petroleum Corp.*, S.D.N.Y., 20 F.R.Serv.2d 170 (1975); *Albert v. Salzman*, N.Y.Supr., App.Div., 41 App.Div.2d 501, 344 N.Y.S.2d 457 (1973). *But see Susman v. Lincoln American Corp.*, N.D. Ill., 550 F.Supp. 442 (1982) (holding that the Seventh Circuit's prior view of Delaware law was mistaken and dismissing plaintiff's derivative suit on the basis of Chancellor Brown's decision below in this case).

**12.** Our Court of Chancery line of authorities in fact includes a number of unreported decisions. But we adhere to our practice of not citing or discussing unreported decisions. With the recent enlargement of the Court of Chancery, it is

*Getty* does not distinguish a stockholder's standing after merger to maintain a derivative action against individual defendants from his standing to maintain a derivative action against a corporate party to the merger. (We defer this discussion of *Bokat* until we take up § 261 and its relevance, if any, to standing.) We now proceed to consider the *Braasch* and *Heit* line of authorities.

■ *Braasch v. Goldschmidt, supra,* is essentially a § 259 case (*see* footnote 6 above). The derivative action was dismissed for loss of standing of the derivative claimant to pursue the claim following the corporate merger because the cause of action belonging to the merged corporation had passed to the surviving corporation. However, *Braasch* stands generally for the proposition that through merger, the derivative standing of former shareholders of a merged corporation to pursue pre-merger claims existing against their former officers and directors is lost. 199 A.2d at 767. *Braasch* may be distinguished factually from the instant case on the ground that the suit in *Braasch* was not filed until after merger and conversion of plaintiff's stock to cash. But *Schreiber v. Carney, supra,* correctly states that "whether the merger takes place before or after the suit is brought" is immaterial. A merger which eliminates ownership of stock eliminates standing to pursue a derivative suit (*see* footnote 6 above).

*Heit v. Tenneco, supra,* does present the issue of the effect of a merger on standing to continue a derivative suit commenced before merger. Relying upon *Braasch,* the *Heit* court held that by virtue of the merger and 8 *Del.C.* § 259 (successor of 8 *Del.C.* § 253) all causes of action formerly held by Case (the company on whose behalf plaintiff's derivative claim was brought) were transferred to the surviving corporation, Newcase. Ruling that only Newcase could thereafter maintain Heit's derivative claim

on behalf of Case, the Court held that Heit had lost standing to continue his action following the merger. *Heit* is distinguishable in that plaintiff was seeking relief only against corporate parties and Case's former management were not party defendants to the derivative suit. However, nothing in *Heit* suggests that the absence of individual defendants from the case would lead to any different result; and the Court's reliance on *Braasch,* which did involve individual defendants, tends to confirm this interpretation.[13]

While this case precedent upon standing as affected by merger may be distinguished factually from the instant case, the distinctions do not detract from the relevance of the principles underlying those cases. The holdings of *Braasch, Heit* and *Schreiber* that a corporate merger destroys derivative standing of former shareholders of the merged corporation from instituting or pursuing derivative claims confirm § 327's requirement of continued as well as original standing.

C

This brings us to § 261, which is the linchpin of plaintiff's argument on standing following merger. Plaintiff argues that § 261 by relating to standing amends not only § 259 but § 327 and thereby "saves" pre-merger derivative claims against management and "prevents" them from passing on merger to the surviving corporation. Plaintiff's construction of § 261 is said to be confirmed by: its legislative history; the plain meaning of its words; and finally, the asserted inability of any other party to pursue the claim for redress.

First, plaintiff argues that the legislative history of § 261 reinforces his view of § 261 as primarily concerned with standing rather than abatement. He refers to a "1974" revision of § 261 substituting its present language, "shall be prosecuted", for the former language, "may be prose-

---

hoped that that Court's practice of issuing unreported letter opinions in significant cases will be substantially curtailed.

**13.** *See also Harff v. Kerkorian, supra* and *Hutchison v. Bernhard,* Del.Ch., 220 A.2d 782 (1965).

cuted."[14] Plaintiff says this change reflects not simply a legislative concern with post-merger survival of pre-merger pending actions (of whatever nature) but that such actions (presumably all) "must be allowed to continue." It necessarily follows, plaintiff argues, that § 261 speaks to and preserves not only pre-merger causes of action but standing as well to pursue them. Why standing? Because, plaintiff says, no one else, including Du Pont, has standing to carry on *this* derivative suit; and otherwise § 261 is a meaningless statute which "creates rights without remedies."

■■■■■ Plaintiff's construction of § 261 as relating to standing is unsound and lacks persuasive authority. His argument that § 261's phrase, "shall be prosecuted", implies not simply survivorship of pre-merger litigation but standing and control

over them post-merger cannot be reconciled with the remaining provision of § 261: "... or the corporation surviving or resulting from such merger or consolidation may be substituted in such action or proceeding." A right in a surviving corporation to a merger to be "substituted" for the pre-merger constituent party to the action clearly precludes construing § 261's words "shall be prosecuted" as a mandate for continued standing following merger.[15] Viewing the whole statute, § 261 may only be reasonably construed as directed to survivorship or non-abatement of pre-merger pending claims.[16]

Plaintiff then urges that his construction of § 261 (as permitting derivative claims against former management to survive a merger) is supported not only by a line of authorities in other jurisdictions [17] but also

**14.** The legislative change in fact took place in 1967, not 1974; and the official revisor of the 1967 amendments has stated that the revision of § 261 was not intended to change the substance of the prior law. *See* E. Folk, *The Delaware General Corporation Law,* § 261 (1972) at page 369.

**15.** Plaintiff attempts to explain away this language in several ways: *one,* that it should be construed as relating "to possible new additional parties and cannot effect [sic] the plaintiff's right to continue the derivative action"; and *two,* that the provision for substitution should be limited to claims which "it can be presumed that the successor corporation paid for [or that] the merger price [was reduced] to reflect the liability of the successor corporation to pay for [such] claims." Plaintiff then argues that his derivative suit does not fall into this category of claims because; in his words, "New Conoco has not paid for the claim, but has instead reduced the price paid for [Old Conoco] by reason of the claims." We find no basis in the record to support plaintiff's rationalization that Du Pont reduced its purchase price for Old Conoco by an amount equal to Old Conoco's liability for the so-called "golden parachutes" awarded its management. As defendants point out, both the arguable value of the claim possessed by Old Conoco as well as Old Conoco's liability on the contract passed to New Conoco under § 259(a). Hence, there would be no reduction in Old Conoco's net worth. Moreover, plaintiff's argument amounts to an indirect attack on the fairness of the terms of the merger; and not having attacked the merger, plaintiff cannot challenge its fairness in this proceeding.

**16.** *See Dooley v. Rhodes,* Del.Super., 134 A.2d 260, 262, *aff'd,* 135 A.2d 114 (1957), citing 2 Sutherland, *Statutory Construction* §§ 4824, 4703 4704 (3d ed. 1966), stating the fundamental proposition that "[e]very part of a statute must be construed in connection with every other part so as to produce a harmonious whole."

**17.** Plaintiff primarily relies upon the line of cases beginning with *Albert v. Salzman* that are found at footnote 11 above. Plaintiff's argument in this case is largely taken from *Abrams v. Occidental Petroleum, supra.* The court in *Abrams* misread *Bokat* as limiting the rule in *Braasch* (prohibiting derivative suits by former stockholders of a merged corporation from proceeding post-merger) to a suit against the surviving corporation. The *Abrams* court thereby read *Bokat* as "no bar to the continuation of a pending derivative action by a merged corporation's stockholders against a party other than the surviving corporation." 20 F.R.Serv.2d at 173. *Susman v. Lincoln American Corp., supra,* in turn relied upon *Abrams'* interpretation of *Bokat's* dictum. Thus, the entire non-Delaware line of cases reaching a different result stems from an erroneous premise. This error has been recognized in *Susman v. Lincoln American Corp.,* N.D.Ill., 550 F.Supp. 442, 446 (1982). Decided after the decision below in this case, the Federal District Court judge recognized the Seventh Circuit Court of Appeals decision as misreading Delaware law and dismissed the *Susman* derivative claims.

by this Court's decision in *Bokat v. Getty,* Del.Supr., 262 A.2d 246 (1970). Plaintiff argues that *Bokat* stands for the proposition that a merger has no effect on a stockholder's standing to continue a pending derivative action brought on behalf of a merged corporation where the action seeks legal redress from a non-corporate party to the merger, in this case, former management of Old Conoco. We cannot agree with this construction of *Bokat.*

*Bokat* was a derivative action on behalf of Tidewater Oil Company against Getty Oil Co. (Tidewater's controlling stockholder) and certain officers and directors of Getty. While the action was pending, Tidewater was merged into Getty and plaintiff's Tidewater shares were exchanged for shares of Getty. The action was dismissed by the Court of Chancery and on appeal this Court affirmed. We held: (a) that the claim against Getty had become moot because the derivative action, being an asset of Tidewater, had passed to Getty; and (b) that the claim against the individual defendants was barred by the Delaware Statute of Limitations.

Plaintiff has construed this Court's opinion in *Bokat* as implicitly recognizing plaintiff's post-merger standing to pursue a derivative action against the individual defendants, stating that dismissal as to them was based on limitations, not lack of standing. Plaintiff specifically refers to the following language of this Court:

This conclusion [namely that the derivative claims against Getty have become moot], however, does not mean that the claims asserted against the individual defendants, among them J. Paul Getty, have likewise been made moot. Such is not the case.

*Id.* at 250. Plaintiff reads this dictum in *Bokat* as expressly recognizing that "pending derivative claims against directors and officers of a merged corporation survive a merger." From this, plaintiff concludes that *Bokat* should be interpreted as a ruling on standing rather than survival of pre-merger claims; and from this, plaintiff

concludes that *Bokat* means "that the original party can continue [the] suit."

We cannot agree that *Bokat* even by dictum addresses standing. This Court's reference to the non-mootness of the claims against the individual defendants should be construed as relating only to survivorship of such claims following merger and not to the question of who has standing to assert such claims. The question of standing was simply not addressed by this Court. It was unnecessary because the basis for dismissal of the suit by the Court of Chancery was statute of limitations, not standing. The issue of standing, though pleaded as a defense, was not addressed by the Court of Chancery, and hence was not reached by this Court on appeal.

There remains to be considered the contention that to permit dismissal of plaintiff's suit against former management of Old Conoco will leave a "wrong" unremedied. This argument goes to policy rather than construction. Therefore, before taking it up, it seems appropriate to summarize our findings with respect to the constructional aspects of this case.

We conclude that 8 *Del.C.* §§ 259, 261 and 327, read individually and collectively, permit one result which is not only consistent but sound: A plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit. Subsumed within this result are the following conclusions: that § 327 alone addresses standing to commence and to pursue a derivative suit; that § 261 relates solely to the impact of merger on abatement of pending causes of action of constituent parties to the merger; that § 261 does not impinge on or amend § 259 as to transfer of ownership of choses in action from the merged party to the surviving party; and that § 261 may not be construed as requiring any pre-merger action (derivative or direct) to be prosecuted to its ultimate end without regard to the wishes of the acquiring owner of the action, in this case, New Conoco. The only impact of § 261 is to

preserve New Conoco's right to proceed with this suit against Old Conoco's former management should it choose to do so.[18] From this, it necessarily follows that § 259 is not diminished by § 261; and plaintiff's contention that his derivative claim passed to Old Conoco's former shareholders rather than to New Conoco must be rejected.[19]

## III

 Finally, we take up plaintiff's policy contention that to permit dismissal of plaintiff's suit against former management of Old Conoco will leave a "wrong" unremedied. Plaintiff argues: that neither New Conoco nor Du Pont would have standing to take over the litigation because any recovery would constitute an inequitable windfall under *Bangor Punta Operations, Inc. v. Bangor & Aroostook Railroad Company*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974); and this will leave former shareholders of Old Conoco "without a remedy to redress wrongs", thereby permitting purported wrongdoers to escape accountability. Defendants disagree, stating that neither the facts nor the principles of *Bangor Punta* are applicable to New Conoco's claim. We agree.

In *Bangor Punta*, Bangor Punta Operations ("BPO"), a wholly-owned subsidiary of Bangor Punta Corp. ("Bangor Punta"), purchased 98.3% of the stock of Bangor & Aroostook Railroad Company ("BAR").

Thereafter, BPO sold BAR stock to Amoskeag Corporation, which later increased its interest to 99%. Two years later, Amoskeag caused BAR to sue Bangor Punta and BPO for acts of mismanagement (including federal antitrust and security violations) allegedly committed by Bangor Punta while it controlled and operated BAR. The United States Supreme Court held that the action could not be maintained because the real party in interest and beneficiary of any recovery was Amoskeag. However, Amoskeag would have had no standing to sue Bangor Punta because (a) it suffered no injury from the alleged wrong since it was not a stockholder of BAR at the time of the wrong; (b) it had received full value for its purchase price; and (c) any recovery by Amoskeag would be a windfall since it would be retaining its shares while recovering its purchase price. *See also Courtland Manor, Inc. v. Leeds*, Del.Ch., 347 A.2d 144 (1975) applying the *Bangor Punta* rationale to bar a direct corporate suit against former management for alleged prior wrongdoing.

*Bangor Punta* is clearly inapposite.[20] If New Conoco were to proceed against Old Conoco's former management and obtain a recovery, it would not constitute a windfall in the *Bangor Punta* sense. New Conoco would be simply pursuing Old Conoco's assets and minimizing its liabilities. All such assets and liabilities clearly passed by vir-

**18.** We do not reach the question of whether dismissal of the derivative suit should be conditioned upon the new owner of the claim (New Conoco) entering an appearance as the prosecuting party for the purpose of taking over the claim. New Conoco is already a party to this lawsuit; hence, its interests are represented. And New Conoco has joined in the motion to dismiss the suit based on plaintiff's lack of standing. Since dismissal is not on the merits, New Conoco is not thereby precluded from prosecuting the underlying claim against former management, should it choose to do so. *See* III below.

**19.** Section 259(a) plainly vests in New Conoco the right to determine the disposition of plaintiff's suit. Clearly, New Conoco, as the acquiring corporation, through its Board of Directors, has exclusive control over its own affairs, in-

cluding the disposition of all choses in action and pending claims passing by reason of the merger. This basic principle of Delaware Corporation Law is explicitly recognized in 8 *Del.C.* § 141(a), Court of Chancery Rule 23.1 and *Zapata Corp. v. Maldonado*, Del.Supr., 430 A.2d 779 (1981).

**20.** Defendant states, "In order for this case even to fit into the *Bangor Punta* framework, it would have to be supposed that Du Pont (as the purchaser) had purchased Old Conoco stock from the sellers (the thousands of Old Conoco public stockholders) in a transaction in which it got all that it bargained for and then turned around and caused New Conoco to sue all of the selling Old Conoco shareholders for mismanagement committed *by them* prior to the merger. That is the claim that was barred in *Bangor Punta*." We agree.

tue of the merger under § 259 to New Conoco. Such choses in action necessarily included the claim asserted by plaintiff in this action.

\* \* \*

Affirmed.