TNS MEDIA RESEARCH LLC (d/b/a Kantar Media Audiences) and Cavendish Square Holdings, B.V., Plaintiffs,

v.

TIVO RESEARCH AND ANALYTICS, INC. (d/b/a TRA, Inc.), Defendant.

TiVo Research and Analytics, Inc. (d/b/a TRA, Inc.), Counterclaim–Plaintiff,

v.

TNS Media Research LLC (d/b/a Kantar Media Audiences) and Cavendish Square Holdings, B.V.; WPP PLC; WPP Group USA, Inc.; Kantar Group Ltd; Kantar Retail America, Inc., Counterclaim–Defendants.

11–cv–4039 (KBF)

United States District Court, S.D. New York.

Signed June 24, 2016

Marc Joseph Rachman, Christopher Andrew Keisner, Davis & Gilbert LLP, New York, NY, Eric J. Rutt, John L. Strand, Michael A. Albert, Robert M. Abrahamsen, Charles Thomas Steenburg, Wolf, Greenfield & Sacks, P.C., Boston, MA, for Plaintiffs.

Perry Mark Goldberg, Tanya Acker, Goldberg, Lowenstein & Weatherwax LLP, Los Angeles, CA, Christopher Andrew Colvin, Kramer Levin Naftalis & Frankel, LLP, Jay Philip Lefkowitz, John Paul Del Monaco, Kirkland & Ellis LLP, Shireen Anneke Barday, USDC, Southern District of New York, New York, NY, Jaime B. Herren, Richard P. Doyle, Janssen Doyle LLP, Orinda, CA, for Defendant.

## MEMORANDUM DECISION & ORDER

KATHERINE B. FORREST, District Judge:

The complaint which initiated this action was filed just over five years ago, in June 2011. (ECF No. 1.) Plaintiffs TNS Media Research LLC (d/b/a/ Kantar Media Audiences) and Cavendish Square Holdings, B.V.,[1] sought a declaration of non-infringement of a patent owned by TRA Global, Inc. ("TRA")—a company which was subsequently purchased by TiVo Research and Analytics, Inc. ("TiVo")—and damages for TRA's alleged breach of a voting agreement. Less than a month later, TRA answered and counterclaimed. (ECF No. 10.) The procedural history following this initial volley is rather long and tortured. In pertinent part, TRA's counterclaims were amended in June 2012, (ECF No. 75), vari-

ous rulings were issued by Judge Shira Scheindlin, the original judge to whom this matter was assigned, the parties took a trip to the Federal Circuit and back, and Judge Scheindlin issued several additional decisions disposing of the case in its entirety. (ECF Nos. 226 & 248.) Shortly following the last decision dated April 25, 2016 ("the April 25 Opinion"), in which she dismissed a number of state law claims (ECF No. 248), Judge Scheindlin retired from the bench. The case was transferred to the undersigned on May 10, 2016.

On May 9, 2016, TRA moved pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the judgment. (ECF. No. 254.)[2] TRA argues that the Court's decision granting plaintiffs' motion to dismiss the state law claims based on a lack of subject matter jurisdiction overlooked governing law and constituted clear error. Having carefully reviewed the matter, and with due respect to Judge Scheindlin, this Judge agrees.

For the reasons set forth below, the motion to alter or amend the judgment is GRANTED; the Opinion and Order at ECF No. 248 is VACATED; and plaintiff's underlying motion to dismiss is DENIED. Accordingly, TRA's state law claims are reinstated.

## I. THE APRIL 25 OPINION

The April 25 Opinion commences by reciting the standard applicable to motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and further recites the requirement for Article III

---

1. Hereinafter, "Kantar" or "plaintiffs."

2. By separate motion on May 9, 2016, plaintiffs moved for an award of attorneys' fees. That motion remains pending and will be dealt with in connection with this Court's sua sponte reconsideration of the summary judgment ruling regarding the patent claims, (ECF No. 226), discussed in an order that shall issue separately.

standing. (Apr. 25, 2016 Op. at 4–5.)[3] The focus of the Opinion then turns to the Supreme Court's decision in Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co., 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974) and the development of the so-called "Bangor Punta Doctrine." The Court interpreted that doctrine to mean that "when a purchaser acquired shares after the alleged commission of wrongful acts, and when a purchaser was aware of the alleged wrongful acts at the time of purchase (that is, the purchase price paid reflected the wrongful acts), then the purchaser incurred no injury, and any recovery would amount to an unearned windfall." (Apr. 25, 2016 Op. at 6–7.) The Court concluded that Bangor Punta "controls this case" and that

> TiVo is barred from bringing the remaining claims in this case against Kantar, and TRA is barred by extension. This action was filed prior to Tivo's purchase of TRA .... At the time the suit was brought, TiVo owned shares in TRA, had a representative on TRA's board, and was aware of TRA's allegations against Kantar. Notwithstanding these allegations and TRA's claimed injury, TiVo negotiated for and purchased TRA. Therefore, like the real party in interest in *Bangor Punta*, TiVo has already "received all [it] had bargained for," and any recovery against Kantar would amount to nothing more than a windfall.

(Apr. 25, 2016 Op. at 10–11.) The Court was further persuaded as to this conclusion based on TRA's damages theory, which she found relied on a diminution of value of the enterprise. (Apr. 25, 2016 Op. at 11.) The Court reasoned that because TiVo had acquired TRA knowing of the pending claims, and had factored that into the price, to allow TiVo now to recover on those claims would amount to an inappropriate windfall; applying the equitable principles of Bangor Punta required dismissal. (Id.)

## II. REASONS FOR VACATUR

There are both procedural and substantive reasons why the April 25 Opinion must be vacated.

### A. Procedural Infirmities

■ As an initial matter, the April 25 Opinion was decided on a procedurally infirm basis. It is unclear precisely what rule of civil procedure the district court was applying to plaintiffs' motion to dismiss and therefore the appropriate standard of review. The initial pages of the Opinion suggest that it was relying on Rule 12(b)(1) and discusses Article III standing. Neither is applicable here. Article III requires that federal courts only entertain cases or controversies in which there is an alleged injury in fact traceable to defendant and capable of judicial redress.[4]

■ Fed R. Civ. P. 12(b)(1) allows for dismissal at the outset of a case for lack of subject matter jurisdiction. However, the Bangor Punta Doctrine is an equitable de-

---

3.  The Court later noted that a dismissal under Bangor Punta is based on equitable and not jurisdictional principles and is " 'not a denial but the assertion and exercise of jurisdiction.' " (Apr. 25, 2016 Op. at 8) (citing Venner v. Great N. Ry. Co., 209 U.S. 24, 34, 28 S.Ct. 328, 52 L.Ed. 666 (1908).)

4.  Nor does this case implicate so-called "prudential standing" issues regarding, inter alia, a litigant's ability to "rais[e] another person's legal rights," "adjudication of generalized grievances," and the "zone of interest" requirement of the statutory basis of the claim crucial to the exercise of federal jurisdiction. Lexmark Int'l, Inc. v. Static Control Components, Inc., —— U.S. ——, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014).

fense, not a defense regarding the deficit of subject-matter jurisdiction. See Bangor Punta, 417 U.S. at 709, 94 S.Ct. 2578 ("The resolution of this issue depends upon the applicable of the settled principle of equity ..."); Lerman v. Joyce Intern., Inc., 10 F.3d 106, 111 (3d. Cir. 1993) (Alito, J.) (characterizing the Bangor Punta Doctrine as an "equitable principle prevent[ing] ... a 'windfall' ").

Indeed, at the time it issued the April 25 Opinion, the Court had supplemental jurisdiction over the state law counterclaims (and had jurisdiction pursuant to 28 U.S.C. § 1338(a) over the patent claims). By order dated March 16, 2016, the Court stated, "this Court rejects counterclaim-plaintiff's arguments, and exercises its supplemental jurisdiction over the remaining state-law claims." (ECF No. 227.) The Court itself recognized that dismissal based on equitable principles allows for a dismissal with prejudice—highlighting that such a determination constituted an exercise of jurisdiction over the merits of a case.[5] (See Apr. 25, 2016 Op. at 8.)

In addition, the Court appears to have embedded certain factual determinations not alleged in the underlying counterclaims or complaint regarding the price TiVo "negotiated, set and paid"—for example, that TiVo had "forc[ed] a reduction in sales price (in part due to TiVo's awareness of the allegations against Kantar" and that recovery would therefore necessarily constitute a windfall. (Apr. 25, 2015 Op. at 11–12.) In addition, the Court based a portion of its rationale on its review of how it understood TRA's damage theory—also not something alleged in the complaint or counterclaims. (Id. at 11.) While it is true that a court may make certain factual de-

terminations when considering whether it has subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), see APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003), that is not applicable here for the reasons discussed above. In addition, it is notable that the Court did not cite any particular rule or standard when making such determinations. Indeed, the determinations are akin to those that would be made in connection with summary judgment—to the extent the uncontroverted record allowed for it. However, the motion was never converted to a motion for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure, which would have allowed the Court to consider factual matters upon due notice to the parties.

### B. Substantive Issues

#### 1. Bangor Punta

■ These procedural infirmities would alone be sufficient basis for this Court to vacate the April 25 Opinion. To do otherwise would be to ignore what is certain reversal by the Federal Circuit. However, the Court is separately and firmly convinced that in all events the Bangor Punta Doctrine is inapplicable here. To understand this most clearly, it is useful to review the Bangor Punta decision itself and what it does and does not stand for.

Bangor Punta concerned the acquisition of the Bangor & Aroostock Railroad Co.'s ("BAR") stock by Amoskeag Co., which then assumed management. Two years after that acquisition, BAR sued its former parent for corporate mismanagement. The nub of the allegations was "when you owned me you mismanaged me." The beneficiary of any recovery would be BAR's new parent, Amoskeag. Notably, if BAR

---

5. Because Article III and federal jurisdiction issues are not at stake, this Court necessarily disagrees that Kantar "could not have" waived the Bangor Punta defense. (Apr. 25, 2016 Op. at 9.) However, it need not reach whether Kantar did in fact waive the defense in order to resolve this motion.

obtained all that it claimed due, its new parent would receive an amount substantially in excess of what it had paid for BAR in the first instance. Relying on equitable principles, the Supreme Court held that a stockholder who has purchased all or substantially all of the shares of a corporation from a vendor at a fair price may not seek to have the acquired corporation recover against the vendor for prior corporate mismanagement and waste of corporate assets that may have occurred during the prior vendor's ownership. Bangor Punta, 417 U.S. at 710, 94 S.Ct. 2578. The Court stated that settled principles of equity provide that so long as the purchaser paid a fair price that would thereby reflect such prior acts, a shareholder may not complain of acts of corporate mismanagement if he acquired shares from those who participated or acquiesced in the allegedly wrongful transactions. Id. at 711, 94 S.Ct. 2578. These requirements provide the court comfort that the buyer knew what he was getting into.

In short, Bangor Punta is generally concerned with actions which are, in essence, derivative in nature. That is, after acquiring shares, the new owner uses the acquired company's corporate machinery to sue the prior owners for acts which were or could have been already "baked into" the sales price. A thoughtful and well-reasoned opinion by Vice Chancellor Strine of the Court of Chancery in Delaware is instructive. Midland Food Servs., LLC v. Castle Hill Holdings V, LLC, 792 A.2d 920, 929 (Del. Ch. 1999). There, plaintiffs sought to recover damages and other relief from the prior owner-operator. Plaintiffs based all of their claims on defendant's actions while he was owner-operator. The Court barred such claims based on the doctrine articulated in Bangor Punta. In doing so, the Court described Bangor Punta as implementing a type of continuous ownership requirement for derivative ac-

tion. This requirement prevents a person who first obtains an interest in a corporation after a claims arose from suing derivatively on the claim on behalf of the corporation. Midland Food, 792 A.2d at 929.

Vice Chancellor Strine stated, "The Bangor Punta Doctrine ensures that a purchaser who obtains a controlling interest in a corporation after potential claims arose against those persons from whom the purchaser obtained his shares cannot use his control of the corporate machinery to cause the corporation to assert those claims directly." Id., 792 A.2d at 929. He stated further that whether the claim sounded in contract, tort or otherwise was not controlling. Id., 792 A.2d at 930. The purpose of the Doctrine, however the claim was pled, is to prevent persons from being able to re-trade arms-length transactions by using the corporation to sue the parties from whom they had obtained their shares. Id. See also Noland v. Barton, 741 F.2d 315, 317 (10th Cir. 1984) (similarly referring to Bangor Punta as supporting the "contemporaneous ownership rule")

Other courts have similarly limited Bangor Punta and rejected broad readings. For instance, in Siegel v. Converters Transp., Inc., 714 F.2d 213, 215 (2d Cir. 1983), the Second Circuit rejected defendants' reliance on a broad reading of Bangor Punta to prevent recovery in a derivative action. There, a plaintiff sued derivatively to recover allegedly illegal payments as unlawful rebates; defendants argued in response that Bangor Punta prevented recovery as there was evidence that plaintiff had ratified and participated in the alleged wrongdoing. The Second Circuit rejected this argument. It interpreted Bangor Punta narrowly and concerned with situations involving buyers who had paid a fair price and suffered no injury as a result of earlier mismanagement. Id. at 215. Less than a decade later

the Second Circuit discussed Bangor Punta as involving the so-called "contemporaneous ownership" standing requirement and described the case as holding that a "purchaser of substantially all of a corporation's shares may lack standing to assert federal or state claims for damages resulting from prior misconduct, where purchaser was not a shareholder at time of misconduct towards the corporation." In re Ivan F. Boesky Sec. Lit., 957 F.2d 65, 69 (2d Cir. 1992).

It is absolutely clear that the Bangor Punta Doctrine does not, and could not, extinguish claims (such as those at issue here) asserted in an action pre-acquisition. See, e.g., Lewis v. Anderson, 477 A.2d 1040, 1050–51 (Del. 1984) (holding that Bangor Punta does not prevent a new owner from pursuing a chose in action); Meyers v. Moody, 693 F.2d 1196 (5th Cir. 1982) (rejecting defendant's contention to "extinguish a cause of action that both existed and was pursued long before the transfer of ... assets took place," and noting that "[t]o hold that the remedy abates because the corporation's assets were sold would result in inequity that the Court in Bangor Punta sought to avoid, and would make [defendant] Moody the beneficiary of a windfall"). None of the principles set forth in the Bangor Punta case itself or other persuasive or binding precedent takes the case so far, and for good reason. Once brought, a claim is not released merely and necessarily based on a change in corporate ownership.

It appears that the Court's April 25 Opinion misunderstood Bangor Punta as providing a type of broad release for claims acquired through acquisition—that a buyer, knowing of the pendency of a claim, would necessarily pay a price reflecting the correct value of such claim. That is incorrect.[6] Rather, claims—choses in action—are frequently pending at time of acquisition. There is no necessary reason why a seller or buyer would forego the value potentially obtained from a third party by a favorable judgment. Indeed, the value of any recovery could be part of the price paid. Put another way, the absence of the claim might itself depress the price. It would be an odd result to allow the mere fact of a sale to release an alleged third party wrongdoer from responsibility for its actions.

## 2. TRA's Claims

TRA's claims here were pending at the time of TiVo's acquisition. (See Am. Counterclaim, ECF No. 75.) That alone distinguishes this case from Bangor Punta, in which the claims were brought only after acquisition. But in addition, TRA's claims have nothing to do with the type of corporate waste or mismanagement that are akin to derivative claims (however denominated). TRA's claims seek recovery for an alleged misuse of competitively sensitive information. (Id. ¶¶ 128–151.) There is no case applying Bangor Punta in which similar claims have been found extinguished solely based on the fact of acquisition. Why would they be? If, in fact, such information was misused, to extinguish those claims would unjustly relieve the wrongdoer from responsibility. That is not the law.[7]

---

**6.** In all events, the determination as to fair price requires an evidentiary finding not appropriate for a motion to dismiss; and even Bangor Punta requires a court to ask whether there are continuing effects arising from the alleged wrongdoing. Here, the nature of the alleged wrongdoing—misuse of competitively sensitive information—could require an involved proceeding to reach a conclusion on that question.

**7.** The fact that third-party happened to own a small stake in TRA during the period of alleged wrongdoing is an irrelevancy to the motion here.

Acquisitions of companies happen all the time while claims are pending. If the law were as counterclaim-defendants' assert, numerous claims on courts' dockets would be subject to dismissal on that basis.[8] Of course, that is not what happens. Instead, the acquiring company steps into the shoes of the acquired.

Because the April 25 Opinion fundamentally misunderstood the Bangor Punta Doctrine, justice requires that it be vacated.

## III. CONCLUSION

For the reasons set forth above, the April 25, 2016 Opinion is VACATED, the Clerk's judgment is also VACATED, and plaintiff's motion to dismiss for lack of standing is DENIED. Defendants' motion for reconsideration is GRANTED. The state law claims are hereby reinstated. The Clerk of Court is directed to terminate the motion at ECF No. 254 and to reopen this action.

SO ORDERED.

---

8. Plaintiffs' discussion of the Chopra deposition testimony characterizing the price paid as "fair" is outside the scope of the record on this motion to dismiss. It is also irrelevant to the instant issue, as it does not refer to a transaction where the Bangor Punta Doctrine should apply. Finally, acquisitions which occur while claims are pending would presumably result in parties asserting that they paid a fair price. Such assertions do not eliminate the potential culpability of the third party wrongdoer or indicate what the value of the claim was that may have been factored into that "fair" price. In other words, the Court does not assume that the "fair" price assumed a zero recovery—rather than a recovery potential that carried some value.