AMF Trust Ventures LLC v i80 Group LLC
2026 NY Slip Op 03753
June 11, 2026
Appellate Division, First Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

AMF Trust Ventures LLC, et al., Plaintiffs-Respondents,
v
i80 Group LLC, et al., Defendants-Appellants.

Decided and Entered: June 11, 2026
Index No. 653519/23|Appeal No. 6880|Case No. 2026-00411|
Before: Kennedy, J.P., Scarpulla, Friedman, Mendez, Pitt-Burke, JJ.

Sidley Austin LLP, New York and Cauley Law Group LLC, Illinois (Thomas K. Cauley, Jr. of counsel), for appellants.
Allen Matlins Leck Gamble Mallory & Natsis LLP, New York (Brian D. Hail of counsel), for respondents.

[*1]
Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered January 28, 2026, which granted plaintiffs' motion for leave to file a second amended complaint, unanimously reversed, on the law, with costs, and the motion denied.
Between 2017 and 2020, plaintiffs purchased Class B interests in defendants i80 Group LLC and i80 Group Lending Opportunities GP LLC, n/k/a i80 Group Specialty Finance GP LLC (together, the Management Entities), which were Delaware limited liability companies. The LLC agreements are governed by Delaware law and set forth terms under which management fees and incentive revenue derived from the Fund would be distributed to Class B members. Defendant Marc Helwani is the Manager of the Management Entities.
In 2021, the Management Entities received a $450 million investment from nonparty Iconiq Capital and put it into a new fund with a new manager and new general partner. Helwani offered to roll over plaintiffs' investment in the Management Entities into the new manager and new general partner but plaintiffs would receive a smaller proportion of the new manager's and new general partner's revenues. Plaintiffs objected to Helwani's actions regarding the Iconiq investment and Helwani subsequently used his contractual discretion to require plaintiffs' complete withdrawal from the Management Entities. Plaintiffs and Hemingway Group LLC, another Class B member and nonparty to this action, then filed separate lawsuits in Supreme Court asserting direct and derivative claims.
Supreme Court improvidently exercised its discretion in allowing plaintiffs to file a second amended complaint. "Leave to amend pleadings is freely granted, unless the proposed amendment is palpably insufficient or patently devoid of merit" (Risk Control Assoc. Ins. Group v Maloof, Lebowitz, Connahan & Oleske, P.C., 127 AD3d 500, 500 [1st Dept 2015] [internal quotation marks omitted]). Here, the second amended complaint is insufficient because plaintiffs lack standing to bring derivative claims on behalf of the Management Entities.
[*2]
Whether a plaintiff has standing to sue derivatively on behalf of a business entity is governed by the law of the state where that entity was organized (see e.g. Matter of Hakimian [Bear Stearns & Co., Inc.], 46 AD3d 294, 295 [1st Dept 2007]). The Management Entities are Delaware LLCs, thus standing is determined under Delaware law, which provides that "[i]n a derivative action [brought on behalf of an LLC], the plaintiff must be a member . . . at the time of bringing the action and . . . [a]t the time of the transaction of which the plaintiff complains" (6 Del C § 18-1002). This is known as the continuous ownership requirement (see e.g. Bamford v Penfold, L.P., 2020 Del Ch LEXIS 79, *74, 2020 WL 967942, *28 [Feb. 28, 2020, C.A. No. 2019-0005-JTL]). It is undisputed that plaintiffs were no longer members of the Management Entities when they filed suit and they do not meet the continuous ownership requirement to bring a derivative action (see Lewis v Anderson, 477 A2d 1040, 1046 [Del 1984]).
There are two exceptions to the continuous ownership requirement (see e.g. id., 2020 Del Ch LEXIS 79 at *76, 2020 WL 967942 at *28). The first is the "reorganization exception" which both parties agree is not at issue here (id.). The second is the "fraud exception" which "applies when a plaintiff loses standing based on a merger that itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of their standing to bring or maintain a derivative action" (id., 2020 Del Ch LEXIS 79 at *77, 2020 WL 967942 at *29 [brackets and internal quotation marks omitted]). Contrary to plaintiffs' contention, the fraud exception is not applicable here because plaintiffs have failed to plead sufficient facts to show that the transaction at issue was fraudulently consummated solely to deprive plaintiffs of derivative standing (see e.g. Arkansas Teacher Retirement Sys. v Countrywide Fin. Corp., 75 A3d 888, 894 [Del 2013]); Parfi Holding AB v Mirror Image Internet, Inc., 954 A2d 911, 936 [Del Ch 2008], appeal dismissed 966 A2d 348 [Del 2009]). Indeed, the fraud exception is "narrow" and "should be cautiously applied" (Parfi Holding AB, 954 A2d at 936).
Further, there is not a third exception to the continuous ownership requirement which would allow a plaintiff to simply allege that their expulsion from a business entity was ultra vires and thus create standing until the court makes a merits determination about whether the expulsion was proper. As noted, Delaware courts are wary of creating additional exceptions to the continuous ownership requirement (see e.g. Feldman v Cutaia, 956 A2d 644, 660-661 [Del Ch 2007], affd 951 A2d 727 [Del 2008]; In re Massey Energy Co. Derivative & Class Action Litig., 160 A3d 484, 488 [Del Ch 2017]
[*3]
In any event, to permit standing to depend on a subsequent merits determination as to whether a plaintiff was properly expelled is contrary to the principle that "standing is . . . a threshold question that the Court may not avoid" (Gerber v EPE Holdings, LLC, 2013 Del Ch LEXIS 8, *47, 2013 WL 209658, *12 [Jan. 18, 2013, C.A. No. 3543-VCN]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 11, 2026