# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CCM ASSOCIATES II LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-0492-BWD |
| | ) | |
| CHANNEL CONTROL MERCHANTS | ) | |
| LLC, KKR & CO, INC., HDC | ) | |
| HOLDINGS II, LLC, ROBERT M. | ) | |
| LYNCH, BRIAN LINDQUIST, SCOTT | ) | |
| STANKIEWICZ, WILLIAM L. | ) | |
| CORNOG, NANCY M. FORD, | ) | |
| ANGAD SINGH, WILLIAM S. SIMON, | ) | |
| JONNIE DOBBS, MARY WALTER, | ) | |
| KATHERINE BYLAK, STEVEN | ) | |
| WISCH, and ROBERT ROBERTS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION GRANTING MOTIONS TO DISMISS

Date Submitted: September 29, 2025
Date Decided: October 21, 2025

Kasey H. DeSantis, FOX ROTHSCHILD LLP, Wilmington, DE; OF COUNSEL: Jordan B. Kaplan, Kieran T. Ensor, FOX ROTHSCHILD LLP, Morristown, NJ; *Attorneys for Plaintiff CCM Associates II LLC*.

Jordan L. Moyer, Brock E. Czeschin, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; OF COUNSEL: Stephen P. Blake, SIMPSON THACHER & BARTLETT LLP, Palo Alto, CA; Meredith Karp, SIMPSON THACHER & BARTLETT LLP, New York, NY; *Attorneys for Defendants KKR & Co., Inc., William L. Cornog, Nancy M. Ford, Angad Singh, William S. Simon, Jonnie Dobbs, Mary Walter, Steven Wisch, and Robert Roberts*.

Emily C. Friedman, Beth Moskow-Schnoll, BALLARD SPAHR LLP, Wilmington, DE; *Attorneys for Defendant Katherine Bylak*.

Shaun Michael Kelly, Sara A. Barry, CONNOLLY GALLAGHER LLP, Wilmington, DE; *Attorneys for Defendants Brian Lindquist and Scott Stankiewicz.*

Andrew H. Sauder, Daniel S. Atlas, DAILEY LLP, Wilmington, DE; *Attorneys for Defendant Robert M. Lynch*.

Steven T. Margolin, Bryan T. Reed, GREENBERG TRAURIG, LLP, Wilmington, DE; *Attorneys for Channel Control Merchants LLC and HDC Holdings II, LLC*.

**DAVID, V.C.**

Plaintiff, a former investor in a Delaware limited liability company, seeks to recover on fraud, aiding and abetting fraud, and "gross negligence" claims premised on purported misstatements in financial documents that were disseminated by the company's subsidiary in 2020, as well as other alleged mismanagement. Plaintiff's claims are time-barred or fail to state a claim. They are dismissed.

## I. BACKGROUND[1]

### A. CCM Releases The 2019 Financials.

Channel Control Merchants LLC ("CCM" or "the Company") is a Delaware limited liability company that "purchas[es] customer returns, insurance salvage and closeouts" from retailers (including Home Depot and Target) to resell at discount stores. Am. Compl. ¶¶ 6, 24, 71.

On June 5, 2015, defendant KKR & Co., Inc. ("KKR") acquired an indirect controlling stake in CCM through nominal defendant HDC Holdings II, LLC ("HDC"), a Delaware limited liability company. *Id.* ¶¶ 7, 25. As part of that

---

[1] The following facts are taken from Plaintiff's Amended Complaint (the "Amended Complaint") and the documents incorporated by reference therein. Am. Compl. [hereinafter Am. Compl.], Dkt. 1; *see Allen v. Encore Energy P'rs, L.P.*, 72 A.3d 93, 96 n.2 (Del. 2013) ("A judge may consider documents outside of the pleadings only when: (1) the document is integral to a plaintiff's claim and incorporated in the complaint . . . ." (citing *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 612 (Del. 1996))).

transaction, CCM Associates II LLC ("Plaintiff") acquired a minority interest in HDC.[2] *Id.* ¶ 26.

Defendant Robert Roberts served as CCM's Chief Executive Officer ("CEO") until June 2018. *Id.* ¶ 28. During Roberts' tenure as CEO, CCM experienced positive financial results, but under the leadership of his successor, Joseph Izganics, CCM's financial performance declined. *Id.* ¶¶ 27, 30. Izganics resigned in February 2019, and defendant Robert M. Lynch was appointed interim CEO before eventually assuming the role on a full-time basis. *Id.* ¶¶ 30–31.

The Amended Complaint alleges that Lynch's management team[3] operated CCM "fraud[ulently] and [with] gross negligence" by damaging CCM's relationships with vendors and by causing CCM to purchase merchandise that was later resold at a loss. *Id.* ¶¶ 35–39. "[T]o conceal [CCM]'s poor financial

---

[2] HDC was governed by a Second Amended and Restated Limited Liability Company Agreement (the "Operating Agreement"). Second Am. and Restated Ltd. Liab. Co. Agt. of HDC Hldgs. II, LLC, Ex. 1 to Ex. 3 [hereinafter OA], Dkt. 12. Section 9.1(g) of the Operating Agreement provides that "no Member shall owe any fiduciary duty to any other Member or the Company." *Id.* § 9.1(g). Section 9.8(b) of the Operating Agreement separately states that, "[t]o the fullest extent permitted by applicable law, no current or former Member . . . will be liable to the Company or to any Member for any act performed or omission made . . . unless such act or omission resulted from gross negligence, fraud, a willful breach of this Agreement or a willful illegal act." *Id.* § 9.8(b).

[3] While serving as CEO, Lynch also ran a consulting firm. Am. Compl. ¶ 33. From that firm, Lynch hired Katherine Bylak as CCM's Chief Financial Officer, Brian Lindquist as its Chief Transformation Officer, and Scott Stankiewicz as its Vice President of Strategy. *Id.*

performance," Lynch and other CCM officers then "prepared and/or authorized financial statements that misrepresented the value of [CCM]'s inventory." *Id.* ¶ 40.

In December 2019, Scott DeRogatis, a former CCM employee and manager of Plaintiff, questioned CCM's management about a "significant increase in the reported margins for [CCM's] Home Depot account that were reflected on the Company's financial worksheets." *Id.* ¶ 41; Ex. 3 to Ex. 3 [hereinafter Response] at 1 n.1, Dkt. 12. Lynch "admitted to DeRogatis" that CCM's "actual margins were likely less tha[n] the margins reflected on [CCM]'s financials." Am. Compl. ¶ 42.

In April 2020, CCM "released its final financial statements for the year ending on December 31, 2019" (the "2019 Financials"). *Id.* ¶ 43. The 2019 Financials inflated the value of inventory from Home Depot by reporting the "sale price value," rather than the "actual price value," of the inventory as required by generally accepted accounting principles ("GAAP"); materially overstated "store sales inventory of items acquired from Target" in a manner inconsistent with GAAP; and overreported sales of certain inventory by 25%. *Id.* ¶¶ 44, 50–52. The Amended Complaint alleges that Plaintiff "justifiably relied upon" the misstated 2019 Financials "to make informed investment decisions, form the basis of its business dealings[,] and to calculate its tax payments" to the IRS. *Id.* ¶¶ 74, 81.

## B.     Plaintiff Makes A Demand On HDC's Board of Managers.

From early 2020 through 2021, Plaintiff "repeatedly" raised concerns with the 2019 Financials to HDC's Board of Managers (the "Board"). *Id.* ¶¶ 4, 56. For instance, in the summer of 2020, "[a] member of [Plaintiff] brought the misstated inventory to the attention of" the Board, but "[n]o corrective action was taken." *Id.* ¶ 47.

Nearly a year later, on May 19, 2021, Plaintiff sent a letter (the "Demand") to the Board, recounting that, "[f]or nearly a year, members of [Plaintiff] ha[d] communicated to HDC . . . their concerns that officers of . . . [CCM] ha[d] misstated the value of the inventory in the audited financial statements." Ex. 2 to Ex. 3 [hereinafter Demand] at 1, Dkt. 12. The Demand alleged that the misstated 2019 Financials were designed "to shield [the CCM management team's] managerial incompetence from the Company's owners[,]" which amounted to a "breach of fiduciary duties," and demanded that the Board "investigate and correct" the purported misstatements and initiate litigation against CCM's officers to recover "the cost to the Company of their misconduct." *Id.* at 1–2.

On September 13, the Board responded to the Demand through counsel (the "Response"). Response at 3; *see* Am. Compl. ¶ 58. The Response noted that "the allegations made in the Demand [] were previously brought to CCM's attention by . . . DeRogatis" and investigated by CCM's financial department, which

"determined that CCM's 2019 year-end inventory valuations were conducted in accordance with an appropriate process." Response at 1–2. The Demand was nevertheless "escalated" to the Board, which designated independent director William Simon to "investigate, review, and analyze" the allegations raised in the Demand. *Id.* at 2. The Response reported that Simon's investigation, aided by counsel at Simpson Thacher & Bartlett LLP, "found no evidence of any inappropriate activities or processes in connection with the audited valuation of fiscal year 2019 inventory." *Id.* at 3.[4]

### C. CCM Recapitalizes, Then HDC Merges With Hilco Global.

In January 2022, CCM and KKR executed a recapitalization transaction that devalued Plaintiff's interest in HDC by "500-fold." Am. Compl. ¶¶ 64–66.

In April 2023, HDC merged with an entity owned by non-party Hilco Global (the "Hilco Merger"), cancelling all outstanding HDC shares. *See id.* ¶¶ 67–68.

---

[4] The Amended Complaint incorporates by reference the Demand and the Response. *See Fortis Advisors LLC v. Allergan W.C. Hldgs. Inc.*, 2019 WL 5588876, at *3 (Del. Ch. Oct. 30, 2019) ("[A] document is integral to the claim if it is the 'source for the . . . facts as pled in the complaint.'" (quoting *In re Gardner Denver, Inc.*, 2014 WL 715705, at *3 (Del. Ch. Feb. 21, 2014))); *see also* Am. Compl. ¶¶ 56–58, 87(iv)–(v) (alleging Plaintiff communicated its concerns to the Board but was rebuffed). Plaintiff does not dispute that the Court may consider the Demand and the Response to "establish that a demand happened and that the demand was denied." Tr. of 9-29-2025 Oral Arg. on Defs.' Mot. to Dismiss the Am. Compl. [hereinafter Tr.] at 34:23–35:2, Dkt. 36.

Plaintiff does not challenge the fairness of those transactions in this litigation. Tr. 34:5–9.

## D.    Procedural History

On August 25, Plaintiff filed an action in the United States District Court for the District of Delaware (the "Federal Action"), alleging claims for fraud, aiding and abetting fraud, and "gross negligence" arising from the 2019 Financials.  *CCM Assocs. II LLC v. Channel Control Merchs. LLC, et al.*, No. 1:23-cv-00934-CFC (D. Del.), D. Del. Dkt. 1.

Plaintiff voluntarily dismissed the Federal Action, and on October 5, it initiated a second action in the Delaware Superior Court.  *CCM Assocs. II LLC v. Channel Control Merchs. LLC, et al.*, C.A. No. N23C-10-034 EMD (Del. Super.), Del. Super. Dkt. 1.  Plaintiff amended its complaint on December 22, and on January 19, 2024, Defendants moved to dismiss.  Am. Compl., Del. Super. Dkt. 35; Defs.' Mot. to Dismiss Am. Compl., Del. Super. Dkt. 38.  On April 1, the Superior Court directed the parties to "brief the issue of whether [the Superior Court] ha[d] subject matter jurisdiction," explaining that, "[w]hile the claims are designated as fraud, [and] aiding and abetting fraud, the Complaint seems to assert derivative claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty."  Del. Super. Dkt. 52.  In response, the parties stipulated to transfer the action to the Court of Chancery.  Del. Super. Dkt. 57.

6

On May 9, Plaintiff refiled its Amended Complaint in this Court. Dkt. 1. Count I of the Amended Complaint alleges a claim for fraud against Lynch, Bylak, Lindquist, Stankiewicz, and CCM. Am. Compl. ¶¶ 70–76. Count II alleges a claim for aiding and abetting fraud against William Cornog, Nancy Ford, Angad Singh, Jonnie Dobbs, Mary Walter, Steven Wisch, and Roberts (collectively, the "Manager Defendants"), CCM, HDC, and KKR. *Id.* ¶¶ 21, 77–83. Count III alleges a claim for "gross negligence" against all Defendants. *Id.* ¶¶ 84–89.

On October 10, HDC and CCM initiated Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware. Dkt. 18. In April 2025, the parties agreed that those proceedings do not preclude this Court from resolving the non-debtor Defendants' pending motions to dismiss. *See* Dkts. 25, 27–30. The Court heard oral argument on September 29. Dkt. 35.

## II.    ANALYSIS

Defendants have moved to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim. When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg.*

7

*Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

## A.    Plaintiff's Fraud Claim Is Dismissed As Untimely.

Count I of the Amended Complaint alleges that Lynch, Bylak, Lindquist, Stankiewicz, and CCM committed fraud by "ma[king] and/or deliberately conceal[ing] intentionally false and material misleading statements through [CCM's] 2019 Financials." Am. Compl. ¶ 71.

Courts of equity apply statutes of limitations by analogy to determine whether a claim is time-barred under the equitable doctrine of laches. *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 975 (Del. Ch. Aug. 3, 2016). The statute of limitations applies when, like here, a plaintiff in the Court of Chancery brings a legal claim seeking legal relief. *Id.* at 983. The applicable limitations period for a fraud claim is three years. *See Largo Legacy Gp., LLC v. Charles*, 2021 WL 2692426, at *9 (Del. Ch. June 30, 2021) ("For cases in equity alleging . . . fraud, . . . Delaware courts have looked to the analogous three-year statute of limitations period established by 10 *Del. C.* § 8106." (citing *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *15–16 (Del. Ch. Dec. 1, 2009))).

On a motion to dismiss, "this Court conducts a three[-]part analysis to determine whether a claim is time-barred." *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *14 (Del. Ch. Dec. 23, 2008).

8

> From the pleadings, the Court determines (1) the date of accrual of the cause of action based on the allegations, (2) if the plaintiff has pleaded facts sufficient to create a reasonable inference that the statute of limitations has been tolled, and (3) assuming a tolling exception has been pleaded adequately, when the plaintiff was on inquiry notice of a claim based on the allegations.

*Id.* (citing *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at \*19 (Del. Ch. July 17, 1998)).

Plaintiff's fraud claim accrued in April 2020, when it received the 2019 Financials. *See Winklevoss Cap. Fund, LLC v. Shaw*, 2019 WL 994534, at \*5 (Del. Ch. Mar. 1, 2019) ("[A] claim for common law fraud accrues on the day the misrepresentation is made."); *see also ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020) ("Delaware is an 'occurrence rule' jurisdiction, meaning a cause of action accrues 'at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action.'" (citations omitted)). Yet Plaintiff waited until August 25, 2023—more than three years later—to file a lawsuit.[5] Count I is therefore time-barred unless the statute of limitations was tolled.

---

[5] Applying Delaware's Savings Statute, the limitations analysis is based on Plaintiff's initial filing in the Federal Action. *See* 10 *Del. C.* § 8118(a) ("If in any action duly commenced within the time limited [fails] . . . a new action may be commenced . . . at any time within 1 year after the abatement . . . .").

9

### 1. Fraudulent Concealment

"When a complaint asserts a cause of action that on its face accrued outside the statute of limitations, . . . the plaintiff has the burden of pleading facts leading to a reasonable inference that one of the tolling doctrines adopted by Delaware courts applies." *Winner Acceptance Corp.*, 2008 WL 5352063, at *14.

Plaintiff contends that the statute of limitations was tolled under the fraudulent concealment exception. "Under the doctrine of fraudulent concealment, a statute of limitations . . . can be 'disregarded when a defendant has fraudulently concealed from a plaintiff the facts necessary to put [the plaintiff] on notice of the truth.'" *LGM Hldgs., LLC v. Schurder*, 340 A.3d 1134, 1146 (Del. 2025) (alteration in original) (quoting *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007)). For the doctrine of fraudulent concealment to apply, "a plaintiff must allege an affirmative act of 'actual artifice' by the defendant that either prevented the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth." *Id.* at 1146–47 (quoting *In re Tyson Foods*, 919 A.2d at 585). Still, "the limitations period begins to run when the plaintiff is objectively aware of the facts giving rise to the wrong, *i.e.* on inquiry notice." *Id.* at 1147 (quoting *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008)).

The Amended Complaint fails to support a reasonable inference that Defendants fraudulently concealed the facts necessary to put Plaintiff on notice of

10

its fraud claim. To the contrary, the Amended Complaint alleges that "Plaintiff repeatedly raised its concerns and [] submitted evidence of the fraud" after receiving the 2019 Financials. Am. Compl. ¶ 4. "Beginning in early 2020 and through 2021, Plaintiff repeatedly brought to the attention of [CCM], HDC (and its Board of Managers), and KKR the falsification of [CCM]'s activities within its 2019 Financials," but was unsatisfied with the company's response. *Id.* ¶ 56. Then, on May 19, 2021, Plaintiff sent the Demand, noting that, "[*f*]*or nearly a year*, members of [Plaintiff] have communicated . . . their concerns that officers . . . have misstated the value of the inventory." Demand at 1 (emphasis added). Those allegations make clear that "the facts underlying [Plaintiff's] claim" were not "so hidden that a reasonable plaintiff could not timely discover them." *Buddenhagen v. Clifford*, 2024 WL 2106606, at *24 (Del. Ch. May 10, 2024) (quoting *Jacam Chem. Co. 2013, LLC v. Jacam Chem. Co. Inc.*, 2024 WL 960180, at *8 (Del. Ch. Mar. 1, 2024)). Plaintiff's fraudulent concealment argument therefore fails.

### 2. Inquiry Notice

Plaintiff argues that the doctrine of fraudulent concealment nevertheless applies because Defendants "prevented Plaintiff from gaining full knowledge of the facts" by withholding "investigation reports or other documents" concerning Plaintiff's claim. Pl. CCM Assocs. II LLC's Combined Answering Br. in Opp'n to Defs.' Mots. to Dismiss the Am. Compl., Ex. 6 at 15, Dkt. 12. But inquiry notice

11

does not require awareness of every fact. *See Gallagher Indus., LLC v. Addy*, 2020 WL 2789702, at *13 (Del. Ch. May 29, 2020) ("A plaintiff need not be aware of 'all of the aspects of the alleged wrongful conduct.'" (quoting *Dean Witter*, 1998 WL 442456, at *7)). Instead, "a plaintiff is put on 'inquiry notice' by 'facts that ought to make [it] *suspect* wrongdoing.'" *Id.* (alteration in original) (quoting *Pomeranz v. Museum P'rs, L.P.*, 2005 WL 217039, at *13 (Del. Ch. Jan. 24, 2005)).

The Amended Complaint alleges that Plaintiff suspected wrongdoing even before receiving the 2019 Financials, repeatedly raised its concerns with the Board after receiving the 2019 Financials, and followed up on those concerns by sending a formal Demand. Am. Compl. ¶¶ 41, 56–57. Those allegations all support an inference that Plaintiff was on inquiry notice. *See Lebanon Cty. Empls.' Ret. Fund v. Collis*, 287 A.3d 1160, 1221 (Del. Ch. 2022) ("[T]he demand supports an inference that stockholders were on inquiry notice about problems at [the company] . . . ."). Notably, the Amended Complaint does *not* allege that Plaintiff discovered new information between receiving the 2019 Financials and making the Demand.[6] Plaintiff's fraudulent concealment argument therefore still fails because Plaintiff was on inquiry notice of its claims.

\*       \*       \*

---

[6] *See* Tr. at 38:2–11 (explaining that between receiving the 2019 Financials and making the Demand, Plaintiff simply "review[ed] the information [it] had").

12

Because Plaintiff failed to file suit within the applicable limitations period, Count I is dismissed as time-barred.

## B. Plaintiff's Aiding And Abetting Claim Is Dismissed As Untimely.

Count II of the Amended Complaint alleges that the Manager Defendants, CCM, HDC, and KKR aided and abetted fraud by "knowingly and intentionally authoriz[ing], actively and substantially assist[ing], and/or deliberately conceal[ing]" misstatements in the 2019 Financials. Am. Compl. ¶ 80.

For the same reasons Plaintiff's fraud claim is untimely, Plaintiff's aiding and abetting claim likewise is untimely. *See Isaac v. Politico LLC*, 2025 WL 2437093, at *13 (Del. Aug. 25, 2025) (affirming dismissal of aiding and abetting counterclaim as untimely where "the court correctly dismissed" the claim on which the aiding and abetting claim was predicated); *Borsody v. Gibson*, 2025 WL 1650395, at *9 (Del. Ch. June 11, 2025) (concluding that aiding and abetting claim was time-barred where the predicate claim was time-barred).

## C. Plaintiff's "Gross Negligence" Claim Is Dismissed.

Count III of the Amended Complaint asserts a claim against all Defendants for "committ[ing] gross negligence" in five ways:

(i) Engaging in reckless management of [CCM];

(ii) Issuing [CCM]'s 2019 Financials that included intentional and false representations concerning the financial well-being and performance of [CCM];

13

(iii) Authorizing other [CCM] representatives to prepare the 2019 Financials that contained false and improperly overstated inventory calculations;

(iv) Failing to take any action against the individuals who prepared the 2019 Financials or to correct or remedy the 2019 Financials; and

(v) Failing to perform a good faith investigation into the allegations of fraud concerning the 2019 Financials.

AC ¶ 87.

"[W]hile captioned gross negligence," Plaintiff's third count "plainly attempts to spell out a breach of fiduciary duty of care." *Prospect St. Energy, LLC v. Bhargava*, 2016 WL 446202, at *7 (Del. Super. Jan. 27, 2016) (internal quotation marks omitted).[7] The parties debate whether such a claim is permitted under the Operating Agreement. Section 9.1(g) of the Operating Agreement limits fiduciary duties "[t]o the fullest extent permitted by Law," but Section 9.8(b) states that an "act or omission result[ing] from gross negligence, fraud, a willful breach of this Agreement or a willful illegal act" is not entitled to exculpation. OA §§ 9.1(g), 9.8(b).[8] The Court does not need to resolve this interpretive question, however,

---

[7] At oral argument, Plaintiff's counsel agreed that Count III alleges "a duty of care claim[.]" Tr. at 45:7–8.

[8] Plaintiff contends that although the Operating Agreement generally eliminates fiduciary duties, Section 9.8(b) clarifies that directors cannot "act grossly negligently or fraudulently." Tr 45:12–16. Defendants, on the other hand, argue that Section 9.8(b) does not "gi[ve] back claims that have been otherwise waived." *Id.* 52:21–22.

14

because even if the Operating Agreement permits such a claim, the Amended Complaint fails to adequately allege a breach of the duty of care, *i.e.*, "gross negligence."

### 1. "Reckless Management"

The Amended Complaint alleges that Defendants breached a duty of care by "[e]ngaging in reckless management of [CCM]." Am. Compl. ¶ 87(i). A claim alleging mismanagement of a corporation's assets is a quintessential derivative claim. *See An v. Cosman*, 2025 WL 2180575, at *6 (Del. Ch. July 31, 2025) ("Claims of corporate mismanagement are classically derivative claims because, if proven, they represent 'direct wrong to the corporation that is indirectly experienced by all shareholders.'" (quoting *In re Saba Software, Inc. S'holder Litig.*, 2017 WL 1201108, at *17 (Del. Ch. Mar. 31, 2017))); *Thornton v. Bernard Techs., Inc.*, 2009 WL 426179, at *3 (Del. Ch. Feb. 20, 2009) (holding claims alleging mismanagement are quintessentially derivative).[9]

---

[9] The claim is derivative because CCM is the entity directly harmed—damage to Plaintiff flows only from CCM's (and indirectly, HDC's) reduced value, where all shareholders suffer harm pro rata based on their relative ownership percentage. *See Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1266 (Del. 2021) ("[T]he worth of the stockholder's interest is reduced to the extent [the company] was harmed—as the Vice Chancellor put it, 'a classic derivative claim.'").

15

Plaintiff cannot assert a derivative claim here for at least two reasons. First, Plaintiff lacks standing to assert a double derivative claim[10] because the Hilco Merger cancelled its HDC shares. *See Sheldon v. Pinto Tech. Ventures, L.P.*, 2019 WL 336985, at *12 (Del. Ch. Jan. 25, 2019) ("[T]he continuous ownership rule requires that 'a derivative shareholder must not only be a stockholder at the time of the alleged wrong and at [the] time of commencement of suit but that he must also maintain shareholder status throughout the litigation.'" (alteration in original) (quoting *Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984))); *Almond for Almond Family 2001 Tr. v. Glenhill Advisors LLC*, 2018 WL 3954733, at *23 (Del. Ch. Aug. 17, 2018) ("[A]s a general matter, a merger extinguishes a plaintiff's standing to maintain a derivative suit." (citing *Lewis*, 477 A.2d at 1049)). Second, even if Plaintiff had standing to bring a derivative claim, it made a demand on the Board, which the Board refused. Am. Compl. ¶ 58; Response at 4. Because the Amended Complaint does not even attempt to plead that the Demand was wrongfully refused, Plaintiff's claim must be dismissed. *See In re Kraft Heinz Demand Refused Deriv. S'holder Litig.*, 2024 WL 3493957, at *8 (Del. Ch. July 19, 2024) ("The Complaint must be dismissed for failure to demonstrate wrongful refusal . . . .").

---

[10] A "double derivative" action is a derivative action maintained by the shareholders of a parent corporation or holding company on behalf of a subsidiary company. The wrongs addressed include wrongs directly incurred by the parent corporation as well as those indirectly incurred, because of wrongs suffered by the subsidiary company.

### 2. Issuing And Preparing The 2019 Financials

The Amended Complaint also alleges that Defendants acted in a grossly negligent manner by issuing the 2019 Financials and authorizing CCM representatives to prepare the 2019 Financials. Am. Compl. ¶ 87(ii)–(iii). These allegations repackage Plaintiff's fraud claim as a breach of fiduciary duty claim. However pled, these claims are still time-barred. *See supra* Section II.A; *Borsody*, 2025 WL 1650395, at *4 ("The applicable limitations period for a breach of fiduciary duty claim . . . is three years.").

### 3. Failing To Investigate Or Take Action To Remedy Plaintiff's Claims

Finally, the Amended Complaint alleges that Defendants breached their duty of care by "[f]ailing to take any action against the individuals who prepared the 2019 Financials or to correct or remedy the 2019 Financials," and by "[f]ailing to perform a good faith investigation into the allegations of fraud concerning the 2019 Financials." Am. Compl. ¶ 87(iv)–(v).

The allegations of the Amended Complaint do not support an inference that the Board acted with gross negligence, much less bad faith,[11] by failing to address

---

[11] Bad faith requires a plaintiff to plead "scienter—either an intent to harm [the company] or knowing indifference to the harm caused." *In re Kraft*, 2024 WL 3493957, at *8 (citing *Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan v. Andreotti*, 2015 WL 2270673, at *27 (Del. Ch. May 8, 2015), *aff'd*, 132 A.3d 748 (Del. 2016)).

the Demand to Plaintiff's satisfaction.[12]   "Gross negligence is 'conduct that constitutes reckless indifference or actions that are without the bounds of reason.'" *In re Kraft*, 2024 WL 3493957, at *8 (quoting *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. Aug. 29, 2008)).  The Amended Complaint and the documents incorporated by reference therein show that the Board responded to the Demand by designating an independent director to conduct an investigation with the assistance of legal counsel at Simpson Thacher & Bartlett LLP.  Am. Compl. ¶ 57; Response at 2–3.  Against that backdrop, Plaintiff's conclusory assertion that the Board "[f]ail[ed] to take any action" or "perform a good faith investigation" does not support an inference that the Board breached a duty of care.[13]  Am. Compl. ¶¶ 59, 87(iv)–(v); *see In re Kraft,* 2024 WL 3493957, at *13 ("This record in no way

---

[12] Plaintiff has not argued wrongful refusal, and the Amended Complaint does not meet that standard in any event.  "A board's rejection of a litigation demand is entitled to the protections of the business judgment rule[.]"  *In re Kraft*, 2024 WL 3493957, at *5.  To rebut the business judgment rule, "a plaintiff must allege particularized facts that raise a reasonable doubt that (1) the board's decision . . . was not grossly negligent; or (2) the board acted in good faith[.]"  *Ironworkers*, 2015 WL 2270673, at *24.  Plaintiff has done neither here.

[13] Plaintiff maintains that the Amended Complaint does not incorporate the Response by reference. Tr. at 34:20–35:7; *but see supra* note 4.  Plaintiff's incorrect position on incorporation by reference further supports the conclusion that the Amended Complaint fails to plead gross negligence or bad faith in connection with the Demand. *See Dahle v. Pope*, 2020 WL 504982, at *6 (Del. Ch. Jan. 31, 2020) ("Given that the Complaint did not acknowledge that the Board made a response, much less plead why the Board acted with gross negligence or bad faith in refusing the demand, the Complaint fails to comply with Rule 23.1 and must be dismissed.").

18

implies gross[] negligence—much less bad faith—by the [board].”); *Dahle v. Pope*, 2020 WL 504982, at \*6 n.55 (“[The board] initiated an investigation, reviewed documents, [and] conducted interviews . . . .”). At most, Plaintiff expresses disagreement with the Board’s rejection of the Demand, which is “insufficient to raise a reasonable doubt that the [board] acted in good faith and on an informed basis.” *In re Kraft,* 2024 WL 3493957, at \*14 (quoting *Ironworkers*, 2015 WL 2270673, at \*27).

*      *      *

Because Count III is derivative, time-barred, or fails to state a claim, it is dismissed.

## III. CONCLUSION

For the reasons explained above, Defendants’ motions to dismiss are GRANTED and the Amended Complaint is DISMISSED.