**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

April 24, 2026

J. Clayton Athey, Esq.
Prickett, Jones & Elliott, P.A.
1310 N. King Street
Wilmington, Delaware 19801

Itshak On
Keren-Or On
24 Haavoda St.
Tel-Aviv, Israel 6382132

> Re: *Kevin Kulak v. Itshak ("Itzik") On, et al.*,
> C.A. No. 2023-0011-KSJM

Dear Counsel, Mr. On, and Ms. On,

This decision addresses eight pending motions: Plaintiff's Request to Strike Defendants' Answering Brief for Exceeding Word Count;[1] Plaintiff's Motion for Partial Summary Judgment;[2] Plaintiff's First Motion for Sanctions;[3] Plaintiff's Second Motion for Sanctions;[4] Defendants' Motion to Intervene filed on behalf of Movado Stockholders;[5] Defendants' Submission Regarding Discovery in Aid of

---

[1] C.A. No. 2023-0011-KSJM Docket ("Dkt.") 143.

[2] Dkt. 130.

[3] Dkt. 55 (Pl.'s Motion for Sanctions). The court took this matter under advisement as the parties submitted additional evidence. *See* Dkts. 88, 89.

[4] Dkt. 111.

[5] Dkt. 140.

Execution;[6] Defendants' Motion to Stay Summary Judgment;[7] and Defendants' Request for Leave to File Summary Judgment.[8]

## I. FACTUAL BACKGROUND

Unless otherwise noted, the background is drawn from undisputed facts in the pleadings and exhibits the parties submitted.[9]

### A. Defendants Form Movado.

Siblings Itshak ("Itzik") On and Keren-Or On founded Movado PT Technologies Inc. ("Movado" or the "Company") in July 2020. Movado is a Delaware corporation.[10] Movado's sole product was a mobile phone application that aimed to analyze a user's musculoskeletal conditions and provide an automated, tailored rehabilitation plan using artificial intelligence and two- and three-dimensional analysis.[11]

Movado wholly owns two foreign subsidiaries: Movado PT Technologies Ltd. ("Movado Israel"), which operated in Israel; and Sironaphysio Sociedad de

---

[6] Dkt. 152.

[7] Dkt. 147.

[8] Dkt. 159.

[9] This decision cites to the exhibits submitted with the briefing for summary judgment by "Ex." number. Plaintiff submitted 80 exhibits; Defendants submitted 16 exhibits. Defendants' deposition transcripts are cited using their first name and "Dep. Tr." The decision also notes in citation form where a witness testified pursuant to the motions for sanctions. This decision refers to Itzik and Keren-Or by their first names to distinguish them. The court intends no familiarity or disrespect.

[10] *See* Ex. 1 (Movado 2021 Annual Franchise Tax Report).

[11] *See* Ex. 2 ("June 2020 Investor Presentation").

responsabilidad limitada de capital variable ("Movado Mexico"), which operated in Mexico.[12]

Movado Israel handled all research and development, recruitment, and salaries, and paid for all of Movado's non-U.S. expenses.[13] Movado and Movado Israel held separate bank accounts at Bank Leumi.[14] Movado Mexico was formed for the sole purpose of signing an agreement with the Mexican Social Security Institute ("IMSS") due to restrictions imposed by the Mexican government concerning the domicile of contracting counterparties.[15]

During the relevant period, Defendant Itzik[16] served as Movado President and board chairman.[17] Itzik was mainly responsible for Movado's fundraising efforts, including outreach to potential and existing investors.[18] Defendant Keren-Or On (with Itzik, "Defendants") served as Movado's co-CEO.[19] In that role, Keren-Or engaged in investor outreach alongside her brother and was also responsible for establishing Movado in the Mexican market.[20] Non-parties Shachar Fleishman

---

[12] Ex. 3 at 7; Ex. 4 ("Itzik On Dep. Tr.") at 35:14–36:10.

[13] *See* Itzik Dep. Tr. at 35:14–36:10; Ex. 5 ("Keren-Or Dep. Tr.") at 30:4–32:5.

[14] *See* Keren-Or Dep. Tr. at 19:18–20:7.

[15] *See id*. at 241:25–242:13.

[16] Itshak goes by Itzik, according to the caption.

[17] *See* Ex. 1; Keren-Or Dep. Tr. at 75:16–20.

[18] Keren-Or Dep. Tr. at 75:16–76:10.

[19] *Id.* at 251:4–6.

[20] *See* Ex. 6 ("Keren-Or Sanctions Tr.") at 10:9–12:17.

(CTO) and Doron Houminer (co-CEO), along with Defendant Keren-Or (co-CEO) managed the Company.[21]

### B. Defendants Solicit Plaintiff's Investment.

Defendants first began speaking with Plaintiff Kevin Kulak about a potential investment in Movado in mid-2020.[22] Through the rest of 2020, Defendants sent Plaintiff materials concerning Movado's purported product, clientele, and fundraising to induce him to invest and assist them with capital formation efforts.[23]

Plaintiff entered into two convertible loan agreements with Movado: (i) an agreement dated September 20, 2020, in the amount of $100,000 (the "September CLA"), and (ii) an agreement dated November 18, 2020, in the amount of $150,000 (the "November CLA" and, together with the September CLA, the "CLAs").[24]

The September CLA provided that Kulak's $100,000 loan would automatically convert to shares of the Company upon the earlier of (i) the consummation of the Company's next financing round in an aggregate amount of $1.5 million or an acquisition of the Company, or (ii) December 31, 2023.[25] The November CLA provided that Kulak's $150,000 loan would automatically convert to shares of the Company upon the earlier of (i) the consummation of the Company's next financing round in an

---

[21] Itzik Dep. Tr. at 22:10–22.

[22] *See* Keren-Or Dep. Tr. at 82:11–15.

[23] *See, e.g.*, June 2020 Investor Presentation.

[24] *See* Ex. 7 ("September CLA"); Ex. 8 ("November CLA").

[25] *See* September CLA at KULAK_0000118–19.

aggregate amount of $2 million, or (ii) December 31, 2021.[26] Although these events occurred, Defendants never converted Kulak's loans and never paid him back.[27]

In addition to the CLAs, on November 30, 2020, Movado issued 26,338 shares to Kulak pursuant to a Joinder to the Founders Agreement.[28] As of November 30, 2020, therefore, Kulak was a shareholder of Movado.

### C. Defendants Make Allegedly False Representations.

According to Plaintiff, Defendants made several misrepresentations in investor solicitation materials. The misrepresentations include descriptions of Movado's technical capabilities (for example, that it could perform 3D musculoskeletal analysis), the scope of its contracts with major customers, and the success of its fundraising efforts for the company.[29]

In June 2020, Keren-Or prepared an investor presentation, which Itzik reviewed and sent to Plaintiff (the "June 2020 Investor Presentation").[30] The file name contained "investor deck" and the cover page stated "Series A."[31] The June

---

[26] *See* Ex. 8 at KULAK_0000301–02.

[27] *See* Itzik Dep. Tr. at 152:24–153:11, 155:4–17.

[28] *See* Ex. 9 (Joinder Agreement).

[29] Dkt. 131 ("Pl.'s Opening Br.") at 6–29.

[30] Keren-Or Dep. Tr. at 89:15–18; Itzik Dep. Tr. at 183:6–184:3. At the time, the Ons used the name Sirona on marketing materials. *See* Keren-Or Dep. Tr. at 87:16–89:10. Later, they changed the name of their product to "Movado." *Id.* at 89:3–6.

[31] June 2020 Investor Presentation at KULAK_0000044–45.

2020 Investor Presentation did not caveat any of the representations it made.[32] But it did contain several alleged misrepresentations:

- "[Movado] provides employers with an autonomous therapeutic platform."[33]

- "Autonomous care via mobile-phone[:] Measures and analyzes key physical attributes of users and delivers personalized action plans."[34]

- "Motion tracking technology[:] Visual sessions are analyzed in real-time to guide users through safe and effective training."[35]

- "Using deep learning, human posture and motion video analysis."[36]

- "[Movado] automatically maps an organization's workforce and identifies the risk for musculoskeletal injuries, while providing tailored training plans for each type of worker, pathology, and potential risk factor"[37]

- "Computer vision and deep learning tech provides fully autonomous exercise coach."[38]

- "The only 2D and 3D real-time, mobile solution for [musculoskeletal] conditions."[39]

---

[32] *See generally* June 2020 Investor Presentation; *see also* Keren-Or Dep. Tr. at 96:6–20 (acknowledging that the presentation did not state the technology was a work in progress).

[33] *Id.* at KULAK_0000048.

[34] *Id.*

[35] *Id*.

[36] *Id*. at KULAK_0000049.

[37] *Id.* at KULAK_0000050.

[38] *Id.* at KULAK_0000058.

[39] *Id.*

- "The app is visually monitoring the user to keep track of repetitions, correct posture and motion."[40]

- Movado "has signed its first [] customer to reinvent physical therapy and pain management for 18M Mexican employees."[41]

Keren-Or admitted the inaccuracy of many of these statements during her deposition. She described Movado's autonomous therapeutic platform as only a "vision."[42] And she admitted Movado did not have a working product at the time.[43] She said, "not actually," "very partially," and "work in progress" when asked if Movado could analyze key physical attributes and deliver personalized action plans.[44] Similarly, she said, "the technology that we worked [] wasn't a product, . . . we couldn't do it in a mobile phone"[45] when asked about the slide presenting Movado as "autonomous care via mobile-phone."[46]

When Itzik was asked about the June 2020 Investor Presentation's accuracy, he explained that management provided all the information, and he was "not a

---

[40] *Id.*

[41] *Id.* at KULAK_0000053.

[42] Keren-Or Dep. Tr. at 92:11–14.

[43] *Id.* at 94:4–95:13, 99:7–9, 102:15–20, 111:4–18.

[44] *Id.* at 95:3–10 (cleaned up).

[45] *Id.* at 99:7–25.

[46] June 2020 Investor Presentation at KULAK_0000048.

technical person."[47]   He then invoked the Fifth Amendment 18 times when asked about whether the technology worked when he sent the presentation.[48]

In 2021 and 2022, investors started requesting information about the Company from Defendants.  Defendants refused to provide any of the requested information and then shut down Movado in March 2022.

Plaintiff began investigating the representations that Defendants made to him prior to his investments.  Plaintiff came to believe that Movado's application had none of the technical capabilities Defendants represented to him.  Plaintiff demanded repayment on his loans.[49]  Plaintiff also demanded inspection under 8 *Del. C.* § 220.[50] Defendants did not respond.

### D.     Plaintiff Files This Litigation.

Plaintiff filed his complaint asserting individual and derivative claims on January 6, 2023:

- In Count I for fraudulent inducement, Plaintiff claims that Itzik and Keren-Or fraudulently misrepresented Movado's technology, customers, and fundraising to induce him to loan Movado $250,000.

- In Count II, Plaintiff claims on behalf of Movado that Itzik and Keren-Or breached their fiduciary duties by misinforming Movado's stockholders, engaging in self-dealing, and acting with a purpose other than the best interest of the Company.[51]

---

[47] Itzik Dep. Tr. at 187:3–11.

[48] *Id.* at 187:18–194:25.

[49] Ex. 74 at 2.

[50] *Id.*

[51] Dkt. 1 ¶¶ 65–75.

Under the initial scheduling order, the deadline for completion of fact discovery was December 1, 2023, the deadline to seek leave to file summary judgment was December 15, 2024, and trial was initially scheduled for June 2024.[52] Defendants' counsel withdrew on March 11, 2024.[53]

Plaintiff learned during discovery that Defendants had spoliated key evidence and were withholding relevant documents. Examples of Defendants' discovery abuses include:

- The deletion of email accounts for all Movado employees except for Keren-Or;[54]

- Failure to preserve relevant communications on various devices despite the pending threat of litigation, including from Itzik's Specta.ai email account,[55] and Defendants' numerous cellphones which were all described as either "lost" or "broken";[56]

- Failure to preserve communications on Defendants' WhatsApp accounts;[57]

- Unsupervised self-collection of documents in response to Plaintiff's discovery requests;[58]

---

[52] Dkt. 27.

[53] Dkt. 54.

[54] *See* Keren-Or Sanctions Tr. at 53:4–55:18.

[55] *See* Ex. 78 (Defs.' Supp. Discovery Disclosures) at 2–3.

[56] *Id.* at 4–5.

[57] *See, e.g.*, Keren-Or Sanctions Tr. at 80:11–81:23, Ex. 79 ("Itzik Sanctions Tr.") at 21:16–22:23, 26:3–6, 58:25–59:2, 65:2–13.

[58] *See* Defs.' Supp. Discovery Disclosures at 2–4.

- Improper invocation of the Fifth Amendment over one hundred times during deposition testimony;[59] and

- The wholesale refusal to turn over documents in their possession, custody, or control, that are relevant to the action, including Movado Israel's bank account statements,[60] documents reflecting fees paid to Movado Israel,[61] Itzik's credit card statements,[62] Itzik's reimbursement requests to Movado,[63] and Itzik's Google calendar, which details meetings with investors and potential investors in Movado.[64]

For over a year, Defendants resisted Plaintiff's efforts to obtain basic discovery materials, including: bank statements for both Movado and Movado Israel; emails and other electronic communications relating to Movado; communications with investors and potential investors; and documents relating to expenses incurred and paid for by Movado.[65]

Defendants' discovery misconduct forced Plaintiff to file two motions to compel[66] and two motions for sanctions,[67] and to conduct court-ordered discovery-

---

[59] *See, e.g.*, Itzik Dep. Tr. at 77:13–15, 80:9–81:7, 81:16–82:6, 119:19–21, 173:8–14.

[60] *See, e.g.*, Keren-Or Dep. Tr. at 33:17–34:3, 34:24–35:15.

[61] *See, e.g.*, *id.* at 44:19–45:25.

[62] *See* Itzik Dep. Tr. at 58:4–12, 66:16–24.

[63] *See, e.g.*, *id.* at 59:11–60:11, 107:19–108:20, 109:12–110:9.

[64] *See, e.g.*, *id.* at 139:13–19, 269:17–270:25; Keren-Or Dep. Tr. at 162:2–163:19.

[65] *See* Dkt. 33, Exs. A–G; Dkt. 111, Exs. A–D.

[66] Dkts. 33, 111.

[67] Dkts. 55, 111.

related depositions of Defendants (in addition to their respective merits depositions).[68]

The court granted the first motion to compel in part, compelling Defendants to cooperate in the production of redacted versions of their personal bank statements.[69]

Defendants have bogged down these proceedings with extensive motion practice, filing two motions for sanctions,[70] a motion to compel,[71] a motion to limit deposition,[72] a motion for recusal,[73] two motions for reargument,[74] and two motions for certification of interlocutory appeal.[75] The court denied all these motions and shifted fees in connection with Plaintiff's opposition to Defendants' second motion for certification of interlocutory appeal (the "Sanctions Order").[76]

In discovery, however, Plaintiff learned that Defendants reimbursed themselves for thousands of what seem to be personal transactions (Uber, Amazon,

---

[68] *See* Keren-Or Sanctions Tr., Itzik Sanctions Tr.

[69] Dkt. 53 at 25–26.

[70] Dkts. 59, 61.

[71] Dkt. 65.

[72] Dkt. 79.

[73] Dkt. 105.

[74] Dkt. 95, Ex. 1; Dkt. 117.

[75] Dkts. 98, 126.

[76] Dkts. 89, 103, 109, 122, 128, 139.

etc.).[77]  He also uncovered about $740,000 worth of reimbursements paid to Movado Israel, which he views as suspicious.[78]

Plaintiff moved for partial summary judgment on March 5, 2025.[79]  The other pending motions are: Plaintiff's Request to Strike Defendants' Answering Brief for Exceeding Word Count;[80] Plaintiff's First Motion for Sanctions;[81] Plaintiff's Second Motion for Sanctions;[82] Defendants' Motion to Intervene filed on behalf of Movado Stockholders;[83] Defendants' Submission Regarding Discovery in Aid of Execution;[84] Defendants' Motion to Stay Summary Judgment;[85] and Defendants' Request for Leave to File Summary Judgment.[86]  The court held an omnibus hearing on January 5, 2026.[87]

---

[77] *See* Keren-Or Dep. Tr. at 50:19–54:20; *see also* Itzik Dep. Tr. at 67:6–7 ("I didn't take a salary.  I took reimbursement.").

[78] Ex. 76 at DFDTS027444, 49, 50; Ex. 77 at 2, 9, 14, 21, 28, 42, 43, 54, 58, 70, 71, 95, 98, 106.

[79] Dkt. 130.

[80] Dkt. 143.

[81] Dkt. 55.

[82] Dkt. 111.

[83] Dkt. 140.

[84] Dkt. 152.

[85] Dkt. 147.

[86] Dkt. 159.

[87] Dkt. 158.

## II.     PLAINTIFF'S MOTIONS

### A.     Plaintiff's Motion To Strike

On April 3, 2025, Defendants filed an "Opposition to Plaintiff's Motion Governing Briefing on Plaintiff's Motion for Partial Summary Judgment" (the "Opposition Brief"),[88] which contained an accurate certification under Court of Chancery Rule 10(d).

Under Rule 7(c)(3), Defendants' opposition brief may not exceed 14,000 words.[89]  On page 101 of the Opposition Brief, following the signatures of both Defendants, the brief states, "Words: 13,895 of 14,000."[90]  The Microsoft Word version of the Opposition Brief, however, reveals that Defendants' brief contains 18,268 words, or 4,373 words more than the total set forth in Defendants' certification.

In response, on April 7, 2025, Defendants told the court that they had omitted footnotes from the Word count.[91]  Defendants resubmitted an edited version of their brief, representing that it contained 13,905 words.[92]  By the court's count, however, the revised brief contains 14,255 (omitting tables, cover page, and signature block).

---

[88] Dkt. 141 ("Defs.' Opposition Br.").

[89] Ct. Ch. R. 7(c)(3).

[90] Defs.' Opposition Br. at 94.

[91] *See* Dkt. 145.

[92] Dkt. 144 at 82.

Despite the multiple misrepresentations, the court has considered Defendants' Opposition Brief when resolving the motion. For that reason, the motion to strike is denied.

## B.      Plaintiff's Motion For Summary Judgment

Plaintiff has moved for summary judgment on Plaintiff's claims for fraudulent inducement and breach of fiduciary duty.

"Summary judgment serves to 'avoid a useless trial' and 'should, when possible, be encouraged for it should result in a prompt, expeditious and economical ending of lawsuits.'"[93]   Under Court of Chancery Rule 56, summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[94]   "A party is entitled to judgment as a matter of law 'where there are no material factual disputes.'"[95]

"If, however, there are material factual disputes, that is, if the parties are in disagreement concerning the factual predicate for the legal principles they advance, summary judgment is not warranted."[96]   "[T]he court must view the evidence in the

---

[93] *In re Coral Gables Luxury Hldgs.*, 2025 WL 1356027, at *4 (Del. Ch. May 9, 2025) (first quoting *McKesson Corp. v. Derdiger*, 793 A.2d 385, 388–89 (Del. Ch. 2002) and then quoting *Davis v. Univ. of Del.*, 240 A.2d 583, 584 (Del. 1968)).

[94] Ct. Ch. R. 56(c).

[95] *Coral Gables*, 2025 WL 1356027, at *4 (quoting *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992)).

[96] *Merrill*, 606 A.2d at 99.

light most favorable to the non-moving party."[97] "But once the moving party puts facts into the record, which, if undenied, entitle it to summary judgment, the burden shifts to the opposing party to present some evidence to show the existence of a material factual dispute."[98]

"[T]he court must accept as true the uncontested facts set forth in the record" if the nonmovant fails to do so.[99] "So long as the uncontested facts 'provide a legal basis for summary judgment,' the court will grant the movant's motion."[100]

### 1.    Fraudulent Inducement

Plaintiff argues that Defendants made false representations regarding Movado's technology, customer relationships, and fundraising to induce Plaintiff to invest.    Plaintiff then loaned $250,000 to Defendants in reliance on those representations.    According to Plaintiff, these actions amount to fraudulent inducement.

"Under Delaware law, the elements of fraudulent inducement and fraud are the same."[101]  The five elements are:

---

[97] *Id.*

[98] *Jernigan Cap. Operating Co. v. Storage P'rs of KOP, LLC*, 2020 WL 7861334, at *5 (Del. Ch. Dec. 31, 2020) (quoting *Union Oil Co. of Cal. v. Mobil Pipeline Co.*, 2006 WL 3770834, at *9 (Del. Ch. Dec. 15, 2006)).

[99] *Id.* (citing *Cooke v. Oolie*, 1997 WL 367034, at *7 (Del. Ch. June 23, 1997)).

[100] *Id.* (quoting *Cooke*, 1997 WL 367034, at *7).

[101] *In re SwervePay Acq., LLC*, 2022 WL 3701723, at *6 (Del. Ch. Aug. 26, 2022) (quoting *Great Hill Equity P'rs, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *31 (Del. Ch. Dec. 3, 2018)).

1) a false representation, usually one of fact, made by the defendant;

2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

3) an intent to induce the plaintiff to act or to refrain from acting;

4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

5) damage to the plaintiff as a result of such reliance.[102]

The June 2020 Investor Presentation misrepresented Movado's technology as of June 2020. It stated, "[Movado] provides employers with an autonomous therapeutic platform."[103] Movado's "[c]omputer vision and deep learning tech provides fully autonomous exercise coach."[104] And "[t]he app is visually monitoring the user to keep track of repetitions, correct posture and motion."[105] In reality, Movado did not have any of those capabilities because it did not even have a working product at the time.[106] It was only a "vision."[107] Itzik did not dispute any of this evidence.[108] The first element is met.

---

[102] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

[103] June 2020 Investor Presentation at KULAK_0000048.

[104] *Id.* at KULAK_0000058.

[105] *Id.*

[106] Keren-Or Dep. Tr. at 94:4–95:13, 99:7–9, 102:15–20, 111:4–18.

[107] *Id.* at 92:11–14.

[108] Itzik Dep. Tr. 187:18–194:25 (invoking the Fifth Amendment 18 times when asked about the contents of the June 2020 Investor Presentation).

Keren-Or knew the June 2020 Investor Presentation contained false representations at the time. In her deposition, she admitted that the product did not work as of June 2020.[109] The second element is met for Keren-Or.

At a minimum, Itzik displayed a reckless disregard for truth.[110] "By statute, Delaware has defined recklessness as a situation where 'the person is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from the conduct.'"[111] The risk "must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[112] Itzik exhibited a gross deviation. Itzik reviewed the June 2020 Investor Presentation.[113] And he served as Movado's President and board chairman.[114] Under the circumstances, a reasonable person would at least know whether the technology worked before soliciting investors for millions of dollars. Itzik's excuse that he was "not a technical person"[115] does not excuse his reckless disregard of Movado's actual technological capabilities at the time. The second element is met for Itzik.

---

[109] Keren-Or Dep. Tr. at 94:4–95:13, 99:7–9, 102:15–20, 111:4–18.

[110] *See Stephenson*, 462 A.2d at 1074.

[111] *PJT Hldgs., LLC v. Costanzo*, 339 A.3d 1231, 1249 (Del. Ch. 2025), *aff'd*, 2026 WL 958201 (Del. Apr. 9, 2026) (quoting 11 *Del. C.* § 231(e)).

[112] *Id.*

[113] Itzik Dep. Tr. at 186:18–21.

[114] *See* Ex. 1; Keren-Or Dep. Tr. at 75:16–20.

[115] Itzik Dep. Tr. at 187:3–11.

The third element is also met. The file name of the June 2020 Investor Presentation contained "investor deck" and the cover page stated "Series A."[116] Keren-Or created the investor deck to solicit Plaintiff and Itzik sent the presentation hoping it would convince Plaintiff to invest in Movado.

As for the fourth element, a plaintiff must present facts showing that he acted based on a material misrepresentation.[117] Plaintiff has met this burden. Plaintiff proved that he justifiably relied on the false representations in the June 2020 Investor Presentation. Plaintiff submitted an affidavit attesting to his reliance on the technology representations made in the June 2020 Investor Presentation when making his $250,000 investment.[118] The misrepresentations were material because they addressed the fundamental capabilities of Movado's only product, an autonomous therapeutic platform on users' mobile devices.

Further, the June 2020 Investor Presentation's other statements justify Plaintiff's reliance. The presentation claimed Movado signed a customer that services 18 million potential users.[119] And it stated, Movado is "the only 2D and 3D real-time, mobile solution for musculoskeletal conditions."[120] Together, those statements bolster the June 2020 Investor Presentation's claims about Movado's technology.

---

[116] June 2020 Investor Presentation at KULAK_0000044, KULAK_0000045.

[117] *See Stephenson*, 462 A.2d at 1074.

[118] Dkt. 131 (Aff. of Kevin Kulak) ¶¶ 3–13.

[119] June 2020 Investor Presentation at KULAK_0000053.

[120] *Id.* at KULAK_0000058.

Plaintiff justifiably believed Movado had genuine technology because it signed a large customer. Similarly, from Plaintiff's perspective, Movado must have had genuine technology if it was the "only" company with a real-time mobile solution for musculoskeletal conditions.

Defendants have not introduced any evidence disputing Plaintiff's reliance. Instead, Defendants argue that Plaintiff identifies only "speculation, hindsight, and forward-looking statements" and concludes that there is no "misstatement of fact."[121] But the 2020 Investor Presentation did not make forward-looking statements. It used the present tense when describing Movado's capabilities.[122] Nor did the 2020 Investor Presentation disclaim any of the representations.[123] It did not classify statements as forward-looking or hedge the technology as a work-in-progress. Ultimately, Defendants' arguments do not qualify as facts sufficient to avoid summary judgment.[124]

---

[121] Dkt. 144 ("Defs.' Answering Br.") at 71–72.

[122] *See, e.g.*, June 2020 Investor Presentation at KULAK_0000050 (stating that Movado "automatically maps an organization's workforce and identifies the risk for musculoskeletal injuries, while providing tailored training plans for each type of worker, pathology and potential risk factor"); KULAK_0000058 ("The app is visually monitoring the user to keep track of repetitions, correct posture and motion.").

[123] *See* June 2020 Investor Presentation; *see also* Keren-Or Dep. Tr. at 96:6–20 (acknowledging that the presentation did not state the technology was a work in progress).

[124] *See Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1032 (Del. Ch. 2008) (explaining that "[m]ere allegations or denials are not sufficient to avoid summary judgment").

Defendants also argue that Plaintiff's claims "collapse under Plaintiff's own conduct" because he "conducted a six-month diligence process in 2022[.]"[125] But this argument fails for timing reasons. Plaintiff executed the CLAs in reliance on the 2020 Investor Presentation in the fall of 2020, before the diligence process.[126] Plaintiff did not have notice that Movado's technology was only a "vision" without a product.

Finally, the fifth element of fraudulent inducement is met. Plaintiff incurred damages from his reliance. To date, he has not recouped the $250,000 he lent to Defendants.[127] Plaintiff's motion for summary judgment is thus granted as to the fraudulent inducement claim.

## 2. Breach Of Fiduciary Duties

Plaintiff claims that Defendants breached their fiduciary duties by lying to stockholders and failing to account for certain expenses. Defendants dispute the merits of Plaintiff's claim. Defendants also argue under Rule 23.1 that Plaintiff failed to adequately allege demand futility and is inadequate to serve as a representative plaintiff. Defendants further contend that Movado's stockholders ratified the challenged conduct.

---

[125] Defs.' Answering Br. at 25.

[126] *See* September CLA; November CLA.

[127] *See* Itzik Dep. Tr. at 152:24–153:11, 155:4–17.

### a. Demand Futility

Defendants' demand futility argument is untimely. Rule 23.1 arguments must be preserved at the pleading stage.[128] Defendants were represented by counsel at the pleading stage. And Defendants chose not to raise Rule 23.1 as a basis for dismissal.

Defendants' demand futility argument also fails on the merits. Rule 23.1 requires that a stockholder either make a pre-suit demand on the board or show that demand is futile because the directors could not impartially consider it.[129] Directors are partial if they receive a material personal benefit, face a substantial likelihood of liability, or lack independence from someone who received a benefit or faces liability.[130] Defendants do not dispute that demand on Movado's board would have been futile because Itzik is the sole director and faces a substantial likelihood of liability from this suit.

Defendants seem to argue that a plaintiff cannot plead demand futility as to an inactive company. But Defendants cite no law for that proposition. Although Movado is not actively operating, it has not been dissolved and still exists. Delaware law requires that even dissolved corporations continue for a term of at least three years for, among other things, "prosecuting and defending suits."[131]

---

[128] *United Food & Commercial Workers Union & Participating Food Indus. Employers Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1048 (Del. 2021).

[129] *Id.* at 1047.

[130] *Id.* at 1058.

[131] 8 *Del. C.* § 278.

b.    **Adequacy**

Defendants have not shown that Plaintiff is inadequate.  Rule 23.1 requires that a derivative plaintiff "fairly and adequately" represent the company's interests.[132]  To show inadequacy, a defendant must demonstrate "a substantial likelihood that the derivative action is not being maintained for the benefit of the shareholders."[133]

Defendants argue that Plaintiff is not maintaining this action for the benefit of Movado stockholders due to a conflict of interest.  Plaintiff is "a co-founder and equity holder of Fizio, a direct competitor to Movado."[134]  But Movado is no longer operational; it does not have competitors.  And Defendants themselves claim that Fizio was not incorporated until July 2022, over four months after Itzik announced that Movado was ceasing operations.[135]

The two cases cited by Defendants do not support their argument.  In *Davis v. Comed, Inc.*,[136] a derivative plaintiff brought a suit to unwind a sale of real estate by the company to a third party; it was later revealed, however, that "[plaintiff] and his cohorts were interested in acquiring the hospital property for themselves if possible

---

[132] Ct. Ch. R. 23.1 (c)(1)(A)(ii); *Griffith v. Stein ex rel. Goldman Sachs Gp., Inc.*, 283 A.3d 1124, 1138 (Del. 2022).

[133] *South v. Baker*, 62 A.3d 1, 22 (Del. Ch. 2012) (collecting cases).

[134] *See* Defs.' Answering Br. at 16–17, 53–54.

[135] *See* Ex. 70 (March 7, 2022 e-mail from Itzik to Plaintiff and others); Defs.' Answering Br., Ex. 12.

[136] 619 F.2d 588 (6th Cir. 1980).

at a foreclosure sale or by other means and they had plans for developing the property for their own benefit."[137]   That was a clear conflict of interest.  Defendants cite no similar fact here.  And in *Youngman v. Tahmoush*,[138] the court denied a motion to dismiss although the plaintiff owned equity in a corporation that had engaged in a pre-suit takeover attempt of the nominal defendant.[139]  That did not happen here.

Defendants offer no other reason why this suit is not in the best interests of Movado's other shareholders.  Plaintiff alleges that Defendants breached their fiduciary duties in ways that harmed the company writ large.  Likely, Plaintiff has spent hundreds of thousands of dollars on attorneys' fees pursuing these claims for the company.  And Defendants have provided no proof that Plaintiff will receive any benefit from his derivative claim that is different from what the other stockholders will receive.[140]

---

[137] *Id.* at 592.

[138] 457 A.2d 376 (Del. Ch. 1983).

[139] *Id.* at 381–92.

[140] *See Emerald P'rs v. Berlin*, 564 A.2d 670, 676 (Del. Ch. 1989) (denying motion to dismiss where defendants failed to show "no meaningful evidence indicating that [plaintiff's] business interests would be harmed if it properly carries on this litigation on behalf of the class or that [plaintiff] could receive any benefit at the expense of the class."); *see also Tahmoush*, 457 A.2d at 380 ("purely hypothetical, potential or remote conflicts of interests never disable the individual plaintiff").

### c. Ratification

Defendants argue that Movado's stockholders, in August 2024, ratified all their actions from July 6, 2020 to January 6, 2023,[141] thereby cleansing any misconduct. Defendants rely on *Corwin* for this argument.[142] This argument has several problems. For one, the alleged stockholder action on which Defendants rely was taken by Movado's "Convertible Loan Holders," not Movado stockholders. Equally problematic, ratification is only effective where it identifies the specific decisions by the corporate fiduciaries that are being ratified.[143] Defendants have produced no evidence showing what the conduct or decisions the ratification approved. Defendants have failed to demonstrate that the purported ratification precludes Plaintiff from asserting its claims.[144]

### d. Merits

Under Delaware law, a claim for breach of fiduciary duty "has only two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty."[145]

---

[141] Defs.' Answering Br. at 60–62.

[142] *Corwin v. KKR Financial Hldgs. LLC*, 125 A.3d 304 (Del. 2015).

[143] *Calma ex rel. Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 586 (Del. Ch. 2015); *see also Gantler v. Stephens*, 965 A.2d 695, 713 (Del. 2009) (explaining that "the only director action or conduct that can be ratified is that which the shareholders are specifically asked to approve.").

[144] Even if the ratification was effective, it would only bar Plaintiff's derivative fiduciary duty claim. It would have no effect on Plaintiff's ability to bring his direct fraud claim.

[145] *HOMF II Inv. Corp. v. Altenberg*, 2020 WL 2529806, at *43 (Del. Ch. May 19, 2020), *aff'd*, 263 A.3d 1013 (Del. 2021).

Fiduciaries breach their duty of loyalty when they deliberately spread misinformation about the nature of the business[146] and misappropriate assets entrusted to management and their supervision.[147] To bring a derivative suit based on breach of fiduciary duty, a plaintiff must own stock (1) when the alleged wrong occurred, (2) when the complaint is filed, and (3) throughout the litigation.[148]

On November 30, 2020, Movado issued 26,338 shares to Plaintiff.[149] Defendants thus owed Plaintiff fiduciary duties as of that date. The issue then is whether Defendants breached those duties after November 30, 2020.

Unlike the fraudulent inducement claim, the facts here do not lend themselves to summary judgment. The record is murkier after Plaintiff became a stockholder. Plaintiff argues that Defendants breached their duty of loyalty by failing to keep financial records and improperly diverting funds to themselves.[150] The evidence on which Plaintiff relies, however, is quite thin—financial records reflecting aggregate amounts.[151] The record is factually rife with respect to Plaintiff's other fiduciary duty

---

[146] *See Malone v. Brincat*, 722 A.2d 5, 10, 14 (Del. 1998); *see also In re Nine Sys. Corp. S'holders Litig.*, 2013 WL 771897, at *9 (Del. Ch. Feb. 28, 2013) ("When directors are not seeking shareholder action, a breach of their fiduciary duty may occur if they 'knowingly disseminate false information' or deliberately misinform shareholders." (quoting *Malone*, 722 A.2d at 9)).

[147] *Dweck v. Nasser*, 2012 WL 161590, at *12 (Del. Ch. Jan. 18, 2012).

[148] *See Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984).

[149] *See* Joinder Agreement.

[150] Pl.'s Opening Br. at 53.

[151] *See, e.g.*, Exs. 76, 77.

theory, which argues that Defendants breached their duty of loyalty when they misrepresented Movado's technology, customers, and fundraising.[152]

Plaintiff's motion for summary judgment on the claim for breach of fiduciary duty is denied.

### C.    Plaintiff's First And Second Motions For Sanctions

On March 25, 2024, Plaintiff moved to compel production and for sanctions (the "First Motion for Sanctions").[153]  Plaintiff argued that Defendants spoliated evidence and sought an adverse inference on that basis.[154]  On May 17, I heard argument and took the matter under advisement to allow the trial record and arguments to inform a resolution.[155]

On October 3, 2024, Plaintiff moved again to compel and for sanctions (the "Second Motion for Sanctions") on two grounds.[156]  First, Itzik invoked the Fifth Amendment during his deposition to obstruct questioning.  Itzik invoked the Fifth Amendment during his deposition over one hundred times.[157]  He invoked the Fifth

---

[152] Pl.'s Opening Br. at 51–53.  Plaintiff makes several other misrepresentation arguments.  But they occurred prior to him becoming a Movado stockholder.  For instance, he argues that Defendants falsely described Movado's technology as "patent pending." *See, e.g.*, Ex. 16 at DFDTS003265.  That representation, however, occurred on September 24, 2020, prior to Plaintiff's investment in November.  *Id.*

[153] Dkt. 55.

[154] *Id.* ¶ 5.

[155] Dkt. 88 at 20–21.

[156] Dkt. 111.

[157] *See, e.g.*, Itzik Dep. Tr. at 77:13–15, 80:9–81:7, 81:16–82:6, 119:19–21, 173:8–14.

Amendment in response to innocuous questions like: "What was Movado's business," "when was Movado established," and "did you receive a salary from Movado"?[158]  He did so although there is no evidence that Itzik faces any criminal liability based on the facts alleged.  Itzik's Fifth Amendment invocations were undoubtedly improper.

Second, Itzik admitted at his deposition that he was purposefully withholding evidence.[159]  He testified that he was withholding evidence until a time when he sees fit to disclose it.[160]  It is unclear whether he has produced the documents or not.

Plaintiff renewed his requests from the First Motion for Sanctions.  He also requested adverse inferences based on his improper invocation of the Fifth Amendment.

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself."[161]  The Fifth Amendment protects against self-incrimination,[162] and it can be raised in civil actions for that purpose.[163]

---

[158] Itzik Dep. Tr. at 36:24–27:2, 48:22–24, 51:14–16.

[159] *See* Itzik Dep. Tr. at 107:19–108:3 ("[O]nce we need to go to court to prove the costs that I spen[t] on Movado . . . we will be there.").

[160] *See id.* at 108:4–109:6 ("Q. But at some point, you will provide me with the costs? A. Yes. Q. Okay. When will that be? A. It depends on your court. Q. Do you understand that you have an obligation to turn relevant documents over? A. Yes.").

[161] U.S. Const. amend. V.

[162] *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 286 (1998) ("The Fifth Amendment protects against compelled self-incrimination.").

[163] *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924) (explaining that the privilege against self-incrimination "applies alike to civil and criminal proceedings").

Delaware Rule of Evidence 512(a) prohibits drawing an adverse inference against a party that invokes the Fifth Amendment in a civil action.[164]

But neither the rule nor case law interpreting it prohibit a court from drawing an adverse inference where the invocation was improper. Courts in Delaware can sanction deponents who improperly invoke the Fifth Amendment at deposition, including through burden-shifting.[165] And Delaware courts have suggested that "reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits."[166]

Still, the relief of adverse inferences is a "serious discovery sanction."[167] Generally, this court will not issue adverse inferences absent some culpable state of

---

[164] *See A. Schulman, Inc. v. Citadel Plastics Hldgs., LLC*, 2018 WL 1812575, at *3–4 (Del. Ch. Apr. 15, 2018); *W.L. Gore & Assocs. v. Long*, 2011 WL 6935278, at *4 & n.31 (Del. Ch. Dec. 28, 2011).

[165] *See Mellado v. ACPDO Parent Inc.*, 2023 WL 8086840, at *10 n.81 (Del. Ch. Nov. 21, 2023) ("The Court has broad discretion to fashion an appropriate remedy, whether it looks to authorities addressing discovery abuse or, by analogy, a witness's refusal to answer questions based on the Constitutional Fifth Amendment right against self-incrimination.").

[166] *State v. Da Zhong Wang*, 2018 WL 2202274, at *4 (Del. Super. Ct. May 11, 2018) (quoting *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994)); *see also Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1194 n.8 (Del. 2015) (citing the "prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment does not preclude the inference where the privilege is claimed by a party to a Civil cause" (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *cf.* Del. R. Evid. 512(a).

[167] *Terramar Retail Centers, LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, 2018 WL 6331622, at *11 (Del. Ch. Dec. 4, 2018) (quoting *James v. Nat'l Fin. LLC*, 2014 WL 6845560, at *9 (Del. Ch. Dec. 5, 2014)).

mind.[168]  And this court will limit inferences to no more than what is necessary to cure the prejudice to the moving party.[169]  Although Itzik's conduct might warrant adverse inferences, it is difficult at this stage to discern the degree to which Plaintiff was prejudiced.  It is thus difficult to fashion a sanction tailored to the harm.  I will therefore hold the motion for adverse inference in abeyance pending development of a fuller record.

## III.  DEFENDANTS' MOTIONS

### A.    Defendants' Motion To Intervene

Defendants moved to intervene on behalf of Movado investors who seek to pursue the stockholder ratification argument.  The motion is denied for many reasons.  First, it is unclear whether any of the proposed intervenors are stockholders with standing to pursue a derivative claim.[170]  Second, Plaintiff has proven an adequate representative capable of prosecuting the claims at issue.[171]  Third, Plaintiff

---

[168] *See* Ct. Ch. R. 37(e) (noting that if a party fails to take reasonable measures to preserve ESI, the court "may order measures no greater than necessary to cure the prejudice" unless first entering a "finding that the party acted recklessly or with the intent to deprive another party of the information's use in the litigation"); *see also Sears, Roebuck & Co. v. Midcap*, 893 A.2d 542, 550 (Del. 2006) (adverse inferences "require a preliminary finding of intentional or reckless destruction of evidence").

[169] Ct. Ch. R. 37(e).

[170] *See* Ct. Ch. R. 24(a)(2) ("On timely motion, the Court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action[.]").

[171] *South St. Corp. Recovery Fund I v. Salovaara*, 1999 WL 504778, at *4 (Del. Ch. July 9, 1999) (denying a motion to intervene where  intervenors' claims were already properly pursued by another party).

would be severely prejudiced by allowing intervenors to hijack a case he has been prosecuting at his own expense for many years.[172]

## B. Defendants' Motion For Relief From Discovery In Aid Of Execution

Plaintiff served discovery in aid of him executing the court's Sanctions Order.[173] Plaintiff served discovery because Defendants have not satisfied the fee award granted in the Sanctions Order. In response, Defendants served an "Opposition" to the discovery, which I will treat as a motion for a protective order.[174] Under Delaware law, discovery in aid of execution of a judgment is appropriate where a judgment remains unsatisfied.[175] It is unclear whether Defendants have now paid the fee award. If they have, then Plaintiff agreed to withdraw the discovery.[176] If not, then Defendants must respond within ten business days of this decision.

---

[172] *See Great Am. Leasing Corp. v. Republic Bank*, 2003 WL 22389464, at \*1 (Del. Ch. Oct. 3, 2003) (explaining that a trial court may deny a motion to intervene depending on "the inexcusableness of the delay and the prejudice to the existing parties").

[173] *See* Dkt. 151.

[174] Dkt. 152.

[175] *See* Ct. Ch. R. 69(b) (authorizing proceedings in aid of execution which includes discovery); *see also Glick v. KF Pecksland LLC*, C.A. No. 12624-CB, at 3 (Del. Ch. June 6, 2018) (ORDER) (ordering defendant to respond to interrogatories and document requests in aid of execution).

[176] Dkt. 153 at 4.

## C.    Defendants' Motion To Stay

Defendants moved to stay discovery based on their Rule 23.1 argument, the ratification argument, and the motion to intervene, all of which this decision rejected.[177]  The motion to stay is denied.

## D.    Defendants' Request For Leave To Move For Summary Judgment

Defendants moved for leave to seek summary judgment on February 5, 2026.[178]  They argue that multiple issues are appropriate for summary judgment—that Plaintiff lacks standing and is not a suitable representative of Movado's stockholders; that Movado's stockholders have ratified Defendants' alleged conduct; and that Plaintiff lacks evidence supporting his fraud claim.  Defendants are denied leave for three reasons.

First, the motion is untimely.  Defendants filed their motion more than a year after the December 15, 2024 deadline.  The court entered a stipulated scheduling order on July 24, 2023.[179]  Under the scheduling order, the parties' deadline to seek leave to move for summary judgment was December 15, 2024.[180]  According to Plaintiff, the parties subsequently agreed to move that deadline to August 6, 2024.[181]

---

[177] Dkt. 147.

[178] Dkt. 159.

[179] Dkt. 27.

[180] *Id.* ¶ 6.

[181] Dkt. 160 at 2.

Only Plaintiff moved for leave to seek summary judgment before either deadline. Defendants opposed Plaintiff's motion, which the court granted.[182]

It is true that the parties originally scheduled a four-day trial for June 4 through 6, 2024.[183] The docket got bogged down with motions for discovery and sanctions,[184] and most of the motions went in Plaintiff's favor.[185] As a result, the schedule slipped, but no one moved to change the court-ordered deadlines of the plenary schedule. Scheduling orders are court orders; parties are bound by them absent leave of the court.[186] And under Rule 6(b)(1)(B), parties must demonstrate excusable neglect to enlarge a deadline after it has passed.[187] Defendants provide no excuse for their late filing.[188]

Second, the Rule 23.1 and ratification arguments lack legal merit.

Third, granting Defendants' motion would waste judicial resources. "There is no 'right' to a summary judgment."[189] "Even where the facts are not in dispute, a

---

[182] Dkts. 110, 115.

[183] Dkt. 27 ¶ 1.

[184] *See, e.g.*, Dkts. 33, 55, 59, 61, 65.

[185] Dkts. 53, 89, 103, 139. The court determined to resolve one of Plaintiff's motion for sanctions after further development of the record. Dkt. 89.

[186] *See Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1238 (Del. 2012).

[187] *See* Ct. Ch. R. 6(b)(1)(B).

[188] *Bernstein v. MyJoVE Corp.*, 2021 WL 4999104, at *1–2 (Del. Ch. Oct. 15, 2021) (refusing to enlarge deadline for a self-represented litigant who failed to demonstrate excusable neglect).

[189] *Stone & Paper Invs., LLC v. Blanch*, 2020 WL 6373167, at *1 (Del. Ch. Oct. 30, 2020) (quoting *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002)).

court may decline to grant summary judgment where a more thorough exploration of the facts is needed to properly apply the law to the circumstances."[190] "When an ultimate fact to be determined is one of motive, intention or other subjective matter, summary judgment is ordinarily inappropriate."[191] The court may "decline to decide the merits of the case in a summary adjudication where it is not reasonably certain that there is no triable issue."[192] Motions for summary judgment require a court to dive deeply into a paper record without the benefit of live witnesses explaining the significance of that record. They require a tremendous investment of judicial resources.

There are no good reasons to permit a motion for summary judgment here. Many issues on which Defendants seek leave to file for summary judgment were either raised in response to Plaintiff's motion for summary judgment or present factually rife issues. Allowing summary judgment in these circumstances would

---

[190] *In re Tri-Star Pictures, Inc., Litig.*, 1995 WL 106520, at *5 (Del. Ch. Mar. 9, 1995); *see also In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2014 WL 2768782, at *9 (Del. Ch. June 12, 2014) ("[T]he court may, in its discretion, deny summary judgment if it decides upon a preliminary examination of the facts presented that it is desirable to inquire into and develop the facts more thoroughly at trial in order to clarify the law or its application.").

[191] *Cont'l Oil Co. v. Pauley Petroleum, Inc.*, 251 A.2d 824, 826 (Del. 1969); *see also Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 2009 WL 3756700, at *4 (Del. Ch. Nov. 9, 2009).

[192] *Unbound P'rs Ltd. P'ship v. Invoy Hldgs. Inc.*, 251 A.3d 1016, 1024 (Del. Super. 2021) (internal quotation marks omitted) (quoting *Parexel Int'l (IRL) Ltd. v. Xynomic Pharms., Inc.*, 2020 WL 5202083, at *4 (Del. Super. Sep. 1, 2020)) (interpreting a parallel rule of the Delaware Superior Court).

waste judicial resources. The request for leave to move for summary judgment is denied.

## IV.     CONCLUSION

Plaintiff's motion to strike is denied. Plaintiff's motion for summary judgment on his fraudulent inducement claim is granted; it is denied as to the fiduciary duty claim. Plaintiff's two motions for sanctions will remain under advisement until the record more fully develops. Defendants have ten business days from this decision to respond to Plaintiff's discovery in aid of execution if they have not paid the fee award already. Defendants' motions to intervene and to stay are denied. So too is their request for leave to move for summary judgment.

I'll end with a word of caution. Rule 11 reflects a common-sense expectation: when lawyers or parties file something with the court, they are certifying that they have done their homework, that their arguments are grounded in law or a good-faith extension of it, that their factual assertions have or are likely to have evidentiary support, and that the filing is not being made to harass, delay, or drive up costs unnecessarily.[193] Rule 11 gives me discretion to act where parties fall short of the standard described above.[194] Since Plaintiff filed this action in 2023, Defendants have filed several unnecessary motions that do not advance the efficient resolution of the case. I do not wish to impose sanctions and would prefer that Defendants proceed in

---

[193] Ct. Ch. R. 11.

[194] *Id.*

a more focused and disciplined manner.  But I will not hesitate to act under Rule 11

if Defendants' troubling litigation conduct continues.

Sincerely,

*/s/ Kathaleen St. J. McCormick*

Chancellor

cc:     All counsel of record (by *File & ServeXpress*)